## MILLIKEN and Others *v.* HAM.

RESULTING TRUST.—*Mortgage.*—*Merger.*—Where a third party pays the pur-chase-money to the grantor for the grantee of lands at the time of the convey-ance, upon a parol agreement, without fraudulent intent, with the grantee, that the grantee shall hold the land in trust, as security for the repayment of such money to such third party, a resulting trust arises in favor of such third party and against the assignee of a judgment who is the purchaser of said land at sheriff's sale on execution issued upon said judgment rendered against said grantee prior to the said conveyance and payment of money, and who before the assignment of the judgment had full knowledge of said agreement and payment of money. But if, after said payment by said third party and the agreement between him and the grantee, said third party receives the note of the grantee, and a mortgage on said land, as security for the purchase-money so paid by said third party, he thereby converts the equitable estate he held in the land, not into an express trust, but into a mere debt secured by mortgage, and subject to the lien of the prior judgment.

MORTGAGE.—*Delivery.*—A mortgage takes effect from the time of its delivery.

NEW TRIAL.—*Motion to Strike Out.*—*Bill of Exceptions.*—Error of the court in ruling on a motion to strike out is not a reason assignable for a new trial, and can only be reserved by bill of exceptions; a new trial is only a judicial re-examination of the issues of fact, and not of questions presented in arriving at the issues, whether those questions were raised by demurrer to a pleading, or by a motion to strike out.

APPEAL from the Howard Common Pleas.

DOWNEY, C. J.—This action was brought by Ham to fore-close a mortgage on certain real estate, executed by Welch and wife, to secure the payment of a note given by Welch to Ham. Milliken was made a defendant because he claimed to have purchased the real estate at a sheriff's sale on an execution issued upon a judgment against Welch, of a date prior to that of Ham's mortgage.

The complaint, as finally amended, states that Welch and wife executed the mortgage to Ham on the 26th day of Jan-uary, 1864, to secure the payment of the note of Welch for two hundred and fifty dollars, at eleven months, and avers that the note and mortgage were given to secure that amount of the purchase-money of said real estate mentioned in the mortgage, advanced by the plaintiff upon the purchase of said real estate of one Polson, which sum went to that ex-

tent, to pay said Polson, and was, in fact, paid by the plaintiff to Polson for said land, on a conveyance thereof by Polson to Welch; and at the time said conveyance was made to and in the name of said Welch by the said Polson, it was agreed by parol between the said plaintiff and Welch, and without any fraudulent intent, that the said Welch was to hold the said land and an interest therein sufficient to cover the amount of money so advanced by the plaintiff, in trust, for the plaintiff so paying said part of the purchase-money, to the extent of the purchase-money so paid; and a short time thereafter, to wit, at the time of the execution of the note and mortgage, the implied and resulting trust was converted into an express trust by the said mortgage given by said Welch and Wife to the plaintiff, and accepted and received by the plaintiff as such; that the said mortgage was duly recorded in the recorder's office of Howard county, Indiana, on the 14th day of November, 1864; that on the 5th day of January, 1857, one John H. Young, recovered a judgment against Welch in the Howard Circuit Court for three hundred and ninety-two dollars and thirty-seven cents; that Welch paid on the judgment, on the 17th of December, 1858, two hundred and fourteen dollars and fifty-six cents; and on the 5th of January, 1865, Young assigned the judgment to Milliken, who caused an execution to be issued thereon, levied upon the said mortgaged premises, and the same were sold by the sheriff and purchased by, and conveyed to, said Milliken; that at the time Milliken purchased the judgment, and took the assignment thereof, and at the time he so purchased said real estate at sheriff's sale, he had full knowledge of the fact of the existence of said note and mortgage, and of the resulting trust merged in said mortgage, and that the same were unpaid, and knew that the same were given to secure two hundred and fifty dollars of the purchase-money of said land, advanced by the plaintiff upon the purchase of said land by Welch of Polson, and knew that said sum of money so secured by said mortgage, and so advanced by the plaintiff, went to that extent to pay

the said Polson for said land on a sale and conveyance thereof by said Polson to said Welch, and that said note and mortgage were given to secure part of the purchase-money for said land; but the said Milliken, well knowing all of the aforesaid facts at the time of his purchase of the aforesaid judgment and land, did in fact purchase said judgment and land with the view, and intent, and purpose of defrauding the plaintiff out of his said debt so secured by said note and mortgage; wherefore the plaintiff asks judgment against Welch for five hundred dollars, and the foreclosure of the mortgage, etc., and that out of the proceeds the plaintiff be first paid his debt and interest, and that the residue be paid to Milliken; that said Milliken be postponed and decreed to hold subject to the said mortgage so due to the plaintiff, etc.

Milliken demurred separately to the complaint for the reasons:

1. There is a defect of parties defendants, in this, that said Milliken is improperly joined.

2. That the court has no jurisdiction, etc.

3. That several causes of action have been improperly joined, etc.

4. That so much of the complaint as relates to him does not state facts sufficient, etc.

5. That the complaint does not state facts sufficient, etc.

This demurrer was overruled by the court and the defendant excepted.

Milliken then answered: first, that Welch executed the note and mortgage, but not on the day therein specified. He denies that the note and mortgage were given for purchase-money, or that they constitute a lien paramount to his title.

Second, for further answer he admits that on the 26th day of January, 1864, Polson and wife sold and conveyed the land to Welch, but says that Welch at the time paid to Polson all the purchase-money. He admits the recovery of the judgment by Young, the payment thereon, and the assignment of the residue of the judgment to him, the issuing of

the execution, levy on, and sale of the land by the sheriff, the purchase of the same by him, and the receipt of a deed therefor from the sheriff. He avers that his judgment was a valid lien on said real estate, and was prior and superior to that of the plaintiff by virtue of his mortgage; that the plaintiff's note and mortgage were executed on or about the 4th day of March, 1864, and that he, to defeat the lien of the judgment of Young, and to defraud the owner and holder thereof, procured said note and mortgage to be dated back to the 26th day of January, 1864, the date of the execution of the deed from Polson to Welch, and wrongfully and falsely procured to be inserted in the said mortgage that the note was given for the purchase-money of said lands, when in truth it was given for money paid by him for Welch.

Third. And the defendant, for further answer says that the said mortgage does not bear the true date of its execution; that it was executed on the 12th day of March, 1864, and was dated back to the 26th day of January, 1864, by the request of the plaintiff, to defeat the title of the defendant; that the mortgage was not recorded until the 14th day of November, 1864, over ten months after it was executed; that after Welch executed the note and mortgage to the plaintiff, and before the mortgage was recorded, Welch sold and conveyed the land to one Shaul, who is now the occupant thereof; that Shaul and wife executed to Welch a note and mortgage on the land for the balance of the purchase-money; that before the plaintiff's mortgage was recorded, Welch, for a valuable consideration, assigned said note and mortgage to this defendant, and the defendant is now the owner and holder thereof; and that at the time Welch conveyed to Shaul, and when Welch assigned the note and mortgage to defendant, the defendant and Shaul had no knowledge whatever of the note and mortgage of the plaintiff, which he avers were executed in consideration of money paid by plaintiff for Welch, and were not for part of the purchase-money of said real estate; wherefore he has a paramount lien; he asks a decree to that effect, and that his title be quieted, etc.

And for additional and fourth paragraph, he says he denies all the material allegations in the plaintiff's complaint.

Welch and wife answered: first, admitting the execution of the note and mortgage, but say they were obtained by fraud, in this, that the mortgage was not given for the pur- chase-money of said real estate, but to secure the plaintiff as surety for Welch, and against the payment of a note executed by Welch to one Pyke, for two hundred and fifty dollars borrowed from Pyke by Welch; and the plaintiff and one Joel Richardson became sureties thereon; and that the words in the note, "for purchase-money of said real estate," were inserted in said mortgage by the hands of the plaintiff, the defendants Welch and wife being persons that could not read or write; that the mortgage was not executed on the 26th day of January, 1864, but was executed, for the con- sideration stated above, three weeks after the 26th day of January, 1864, and was dated back, or ante-dated, by the pro- curement of this plaintiff; wherefore, etc. Second, that in the month of January, 1864, the plaintiff, being about to erect for himself a house, agreed to pay Welch six hundred dol- lars to do the carpenter's work, that he commenced the work, and performed one-half of the work, worth two hun- dred dollars, a bill of particulars of which is filed; and that afterward the plaintiff compelled him to quit the work, to his damage two hundred dollars; and that the work was to discharge the note on which the suit is brought. Third, that before, and at the time of the commencement of this action, Ham, the plaintiff, was, and still is, indebted to him in the further sum of seventy-five dollars for work and labor done and performed by Welch for him, at his request, etc.

There was a reply in denial of the second and third para- graphs of the answer of Welch and wife, and the second and third paragraphs of the answer of Milliken; and to the third paragraph of the answer of Welch there was also a reply of payment.

The issues thus formed were tried by a jury, who found

for the plaintiff against David Welch, and assessed his damages at, etc., and that he have foreclosure of mortgage against all the defendants.

There was a motion for a new trial by Welch, and also by Milliken. Welch assigns as reasons the improper admission of evidence on behalf of the plaintiff, and the wrongful rejection of evidence offered by the defendant; excessive damages; error in the assessment of the damages; that the verdict was not sustained by the evidence, and was contrary thereto, and contrary to law and the evidence.

Milliken assigned as reasons, errors of the court in its rulings on the pleadings (?), in refusing evidence offered by him, in admitting evidence over his objection, in refusing charges asked by him, and in giving charges over his objection and exception; that the verdict of the jury is not sustained against him by sufficient evidence, is contrary to the evidence and law of the case; and in refusing to strike out part of the complaint (?).

It may be remarked, before proceeding to consider the alleged errors, that the reasons for a new trial, so far as they concern the decisions of the court on the questions relating to striking out parts of the pleadings, are wholly unnecessary; and that the making of the motion for a new trial, and its being overruled by the court, do not present the question to us of the correctness or incorrectness of such ruling. Such questions can only be reserved by bill of exceptions. They are not reasons for a new trial, because they are not errors committed during the trial. A new trial is only a judicial re-examination of the issues of fact in the case, and the granting of a new trial does not go back to and include a re-adjustment of the issues, or a re-examination of the questions presented in arriving at the issues, whether those questions were raised by demurrer to a pleading, or by a motion, sustained or overruled, to strike out parts or all of any pleading.

The first alleged error which we are required to notice is the overruling of the demurrer of Milliken to the complaint.

We confess that the questions discussed under this assignment are not free from difficulty. We have, however, arrived at the conclusion that the allegations of the complaint are sufficient to show a resulting trust in favor of Ham for the amount of money which he alleges he paid toward the price of the land. We come to this conclusion, in part at least, from the authority of *McDonald* v. *McDonald,* 24 Ind. 68.

It is claimed, however, by counsel for the appellants, that the taking of the mortgage by the appellee was a waiver or giving up of this interest, and left Ham to claim only by virtue of the mortgage lien. We think this objection to the claim of the plaintiff, as founded on a resulting or implied trust, must be sustained. By taking the note and mortgage, the plaintiff converted his interest in the land into a mere debt, secured by the mortgage. For this reason the complaint was bad, and the demurrer of Milliken thereto should have been sustained.

The next question relates to the correctness of the instructions given and refused by the court. The court gave this instruction:

"The whole answer of Milliken presents two main questions: 1. Were the note and mortgage made and executed on the day of their date, or were they made and executed on some subsequent day, and dated back to that date, and did Ham pay the purchase-money to Polson? 2. If the note and mortgage were ante-dated, and Ham paid the purchase-money, was there a verbal contract made between Ham and Welch, at the time of the sale and the payment of the purchase-money, that Ham should hold a lien on the land until the purchase-money should be paid by Welch to Ham, and did Milliken have full knowledge of such verbal contract before he purchased the Young judgment? If the jury believe, from the evidence, that the notes and mortgage have the true date, and that Ham paid Polson the purchase-money, they should find for the plaintiff against Milliken."

Also: "If the jury believe, from the evidence, that the

note and mortgage were made and executed on a day after date, but were dated back to the 26th of January; and if the jury further believe that at the time of the sale by Polson to Ham, Ham furnished the purchase-money, and Welch and he agreed, by mutual consent, that Ham should hold a lien on the land until the payment to Ham of the purchase-money, and that Milliken had full knowledge of such verbal contract before he purchased the Young judgment, they should find for the plaintiff against Milliken."

It is very evident that in these instructions the court did not put the case on the same grounds on which it was put by the plaintiff in the complaint. Had the complaint put the case on the ground that a lien on the land was contracted for by parol, and was afterward consummated by the execution of the mortgage, very clearly it could not have been sustained as against the lien of the judgment. It is only because we regard the complaint as showing facts from which the plaintiff had an equitable estate in the land in consequence of an implied or resulting trust, that we hold it sufficient on this point. We are not aware of any rule of law by which, under such circumstances, a valid lien on land can be reserved or created by parol. Neither the allegations in the pleadings nor the evidence seem to us to justify these instructions. Ham's evidence on this point is as follows:

"In the winter of 1864, Welch moved into the vicinity of Fairfield; was going to put up a meeting house; was a poor man. I borrowed one hundred and fifty dollars of Pyke and one hundred from Hughes, and bought the land described in the mortgage; the money went to Polson; he was the owner of the land, and Welch took it in trust. I was to be made safe for the payment of the money I advanced. This was the agreement between Welch and me. I do not recollect just the language of the agreement; he said he would make me safe; he agreed to give me a mortgage; he told me he would make me safe in the money. A week after he told me he would make me a mortgage, and

made the mortgage; Prime made it; he was a notary public. I paid the money to Pyke and Hughes. I took Richardson with me, and he went my security. I do not remember whether Welch's name was on the note or not."

Welch, on the same point, testified as follows:

"I cannot exactly remember the date of the mortgage; it was made in February, 1864. I met Joel Richardson, and he advised me that Pyke had the money to loan. I took Richardson and Ham, and we went to Pyke, and I told him I wanted the money, and I would give him security. I wrote the note, and Pyke said he did not know Ham, but if Richardson would sign it, he would let me have it. Myself, Ham, and Richardson then signed the note, and I got the money. Ham and Richardson signed it as security. I borrowed it ($150) of Pyke on the 25th or 26th of January, 1864. I borrowed it until the next Christmas. I gave Richardson and Ham no security at that time. Pyke had not the money. Richardson had it; he had borrowed it from Pyke, and paid it to me the next day for Pyke at Ham's. Ham and myself, in February—say the middle of February— went to Prime to get the mortgage. I told Ham when I got the money that I would not take the money unless I got his job. Two or three weeks after I bought the land, I went to Ham, and told him I had better give him a mortgage to secure him, and told him about Young's judgment. I paid Polson a part of the money the next day after I got it. I paid Polson all down but a small portion."

One Thompson testified that he paid Polson, for Welch, twenty-four or twenty-five dollars of the purchase-money.

Richardson testified: "I was surety for Welch to Pyke on note for the borrowed money. Welch drew the note. Pyke called on me first; I refused; then on Ham, and he refused; and then Welch drew it. I cannot recollect the amount. I recommended Ham to Pyke as being solvent. Can't recollect who got the money."

This evidence does not justify the conclusion that Ham had any interest in the property by resulting trust, nor that

he had any valid lien on it prior to the time of the execution of the mortgage, which was some time after the date of the conveyance of the land by Polson to Welch, at which time the judgment lien attached. The mortgage does not bear the true date of its execution. It was dated back to correspond with the date of the Polson deed; but this does not add anything to its force and effect. It took effect from its delivery, and not from the day of its date. *Love* v. *Wells*, 25 Ind. 503.

The judgment is reversed, with costs, and the cause remanded.

*A. Brouse, N. Purdum,* and *M. Bell,* for appellants.