## Love and Another v. Wells.

SUNDAY LAW.—DEED.—A deed made on Sunday is void.

SAME.—RATIFICATION OF.—A contract not otherwise invalid, but void only because made on *Sunday*, constitutes an exception to the general rule that void contracts are not susceptible of ratification.

SAME.—DELIVERY OF DEED.—A deed takes effect from the time of its delivery, and though signed and acknowledged on *Sunday*, if delivered on another day it is a valid deed, whatever may be the effect upon the acknowledgment.

INNOCENT PURCHASER.—Where a deed is executed on *Sunday*, but by the procurement of the grantor is dated upon the preceding day, he cannot assert the invalidity of the deed against a subsequent *bona fide* purchaser.

APPEAL from the *Daviess* Circuit Court.

ELLIOTT, J.—This was a suit brought by *Wells*, the appellee, against the appellants to recover the possession of a certain tract of land.

The defendants below answered by a general denial. The court, to which the cause was submitted for trial by agreement of the parties, found for the plaintiff. A motion by the defendants for a new trial was overruled; judgment for the plaintiff. The defendants appeal. The evidence is made a part of the record by a bill of exceptions. On the trial, the plaintiff gave in evidence a deed of conveyance in fee, to himself, for the land in controversy, dated *October* 25th, 1845, from *Charles F. Wells* and wife, said *Charles F.* being the original patentee from the *United States.* The defendants then gave in evidence a deed from the plaintiff and wife to the *Evansville, Cleveland and Indianapolis Straight Line Railroad Company*, dated the 26th of *April*, conveying to said railroad company the land in controversy, in fee simple. This deed was acknowledged before a justice of the peace of *Daviess* county, the certificate of acknowledgment bearing the same date as the deed, and was recorded in the recorder's office of said county on the 11th day of *July*, 1856. The consideration stated in the deed is $1,000,.

the receipt of which is acknowledged. The defendants further proved, by the proper deeds of conveyance, that the railroad company, for a valuable consideration, sold and conveyed said land to *Carpenter* and *Love,* in fee, on the 23d of *July,* 1856, who, on the 2d day of *April,* 1858, sold and conveyed the same to *Oliver H. Smith.* These deeds were also acknowledged and recorded; that from the railroad company to *Carpenter* and *Love* was recorded *June* 30th, 1857, and the one from the latter to *Smith April* 26th, 1858. It further appears by the evidence that since the date of the last named deed, the said *Smith* has deceased, leaving surviving him three children who are his heirs, one of whom is the wife of the defendant, *Love,* "who claims to have the possession and some title to the lands mentioned in the complaint, under or through the deeds given in evidence by the defendants."

The defendants having closed their evidence, the plaintiff, being sworn, was permitted, over the objection of the defendants, to testify in his own behalf that the deed executed by him to the railroad company, dated *April* 26th, 1856, was in fact executed on the 27th of *April* of that year, the same being *Sunday.* He testified, in substance, as follows: that although said deed from him to the railroad company purports to have been executed on the 26th day of *April,* 1856, yet that in fact it was executed and acknowledged by him and his wife on the 27th of *April,* 1856, which was *Sunday;* that *Asahel C. Page,* who resided in his neighborhood, was, at the time of the execution of the deed, one of the directors of said railroad company, and negotiated the purchase of the land in controversy on behalf of the company; that said *Page* came to the plaintiff's house the day the deed was executed, bringing with him the justice of the peace who took the acknowledgment, and told the plaintiff he would like to have the deed that day, to which the plaintiff assented. The deed was then prepared, signed and acknowledged, and by agreement between *Page,* the plaintiff and the justice, the deed and

the certificate of acknowledgment were dated back one day, so as to make all appear to have been done on *Saturday*, the 26th, instead of *Sunday*, the 27th of the month. At the time the deed was executed, "the land had some small improvements on it, but had been mostly vacant and wholly unoccupied since that time; some timber had been taken off since, but not by order of the railroad company that he was aware of." The plaintiff further testified that he had done nothing since to ratify the deed; "that he had never since had possession of the land, or exercised any acts of ownership over it, but it had been his intention ever since a short time after the deed was executed to reclaim the land at some time or in some way, but that he never gave the railroad company, or any body claiming the land under it, any notice that he claimed the land until some time in *June*, 1864, when *Love*, one of the defendants, came to *Washington*, the county seat, to sell this and some other lands, in pursuance of a notice previously posted; that on that day the plaintiff told said *Love* 'that he claimed the land in controversy, and protested against its sale;' that in consequence of said notice, *Love* did not offer to sell the land in controversy on that day. That after the deed in question was executed it was left with *Browning*, the justice of the peace who took the acknowledgment, to be delivered to *Page*, and he, *Browning*, took it away the same evening, and the plaintiff never saw it afterward until its production on the trial."

*James Wade* was also sworn as a witness for the plaintiff, and in his evidence substantially corroborated the statements of the plaintiff as to the circumstances attending the execution of the deed, and that it was executed on *Sunday*.

The plaintiff, *Wells*, bases his claim to recover the land exclusively on the ground that his deed to the railroad company, having been executed on *Sunday*, is void, and therefore conveys no title whatever to the railroad company.

A statute in force at the time the deed was executed, provides "That if any person of the age of fourteen years

and upwards shall be found on the first day of the week, commonly called *Sunday*, rioting, hunting, fishing, quarreling, at common labor, or engaged in their usual avocations, works of charity and necessity only excepted, such person shall be fined," &c.    An exception is also made in favor of those who conscientiously observe the seventh day of the week as the *Sabbath*, travelers, &c.    2 G. & H., 481.

In *Link* v. *Clemmens*, 7 Blackf. 479, it was held, under a similar statute, that a replevin bond executed on *Sunday* came within the term "common labor," and was therefore void, as being a contract prohibited by law.

And so in *Reynolds* v. *Stephenson*, 4 Ind. 619, it was held that a promissory note executed on *Sunday* was void.    In that case it is said: "It is admitted that the note in question was made on *Sunday*.    Then the record presents this question: Did the making of it constitute an act of 'common labor?'    We think the statute was intended to prohibit every description of secular business not within the exceptions pointed out by itself.    The execution of this note was secular business and not embraced by the exceptions.    This view is sustained by various adjudications made upon statutes, the provisions of which are in effect the same as ours.    *Allen* v. *Deming*, 14 N. H. 133; *Towle* v. *Larrabee*, 26 Maine 464; *Adams* v. *Hamell*, 2 Doug., (Mich.,) 73.    See also notes to 2 Parsons on Contracts 764, *e.*"

It is also a general rule of the law that void contracts are not susceptible of ratification.    But in *Banks* v. *Werts*, 13 Ind. 203, it was held that contracts not otherwise obnoxious, but void only because made or executed on *Sunday*, formed an exception to the general rule, and were susceptible of subsequent ratification.    We think the ruling in that case is fully sustained by the authorities there referred to, as well as by the principles of right and reason.    Contracts prohibited by law, because they are in their nature contrary to public policy, or repugnant to the good of society or public morals, are void, and in their very nature incapable of subsequent ratification.    But contracts void only because made

on *Sunday*, proper and lawful in all other respects, stand on a different basis, and may well form an exception to the general rule that void contracts are incapable of subsequent ratification.

In *Adams* v. *Gay*, 19 Vt. 353, it is said that contracts made on *Sunday* should be held an exception, in some sense, from the general class of contracts which are void for illegality. They are not tainted with any general illegality, but are only illegal as to the time in which they are entered into. It is not sufficient to avoid them that they have grown out of a transaction on the *Sabbath*, and although closed upon that day, yet if affirmed upon another day, they then become valid. This court, in *Banks* v. *Werts, supra*, after referring to this and other cases, add: "These decisions relate alone to contracts made on *Sunday*. They proceed on the ground of a retention of the property, and a subsequent ratification by the parties; and in principle they seem to be correct."

Here, *Wells*, after executing the deed, abandoned the possession of the land to the railroad company, retained and still retains the purchase money, set up no claim to the land, and exercised no acts of ownership whatever over it, for a period of over eight years. Now, applying to these facts the principles laid down in the cases above referred to, it seems but reasonable to hold that by these acts, both affirmative and negative, the execution of the deed was subsequently ratified by *Wells*. But we do not place the decision of the case on this ground.

Another question is incidentally presented by the record in this case. A deed takes effect from the time of its delivery, and not from the time it may be signed and acknowledged. It may be drawn up, signed, and even acknowledged on *Sunday*, but if not delivered until a subsequent day it is a valid deed, whatever might be the effect of the acknowledgment made on *Sunday*. 2 Parsons on Contracts 764, *g*, and authorities there cited. The evidence in the case at bar does not show when the deed was, in fact,

delivered. It does not show that it was delivered on *Sunday*. The only evidence bearing on the point is that of the plaintiff, who, as we have seen, testified that when the deed was executed "it was left with *Browning*, the justice who took the acknowledgment, to be delivered to *Page*, and he, *Browning*, took it away the same evening." *Page*, to whom *Browning* was to deliver the deed, was the agent of the railroad company, but there is no evidence to show that *Browning* was an agent of the company. He went to *Wells'* with *Page*, but in taking the acknowledgment he was transacting business for *Wells*, and not for the railroad company. *Wells* delivered the deed to *Browning*, or rather the latter retained it to be delivered to *Page*, the agent of the company, and, as far as is shown by the evidence, *Browning* seems to have been the agent of *Wells* for the delivery of the deed to *Page*, and the evidence is silent as to when the delivery was actually made.

But assuming that the deed was delivered on *Sunday*, the question then arises, can *Wells*, who executed the deed to the railroad company, set up its invalidity against the subsequent vendees of the company, who purchased the land for a valuable consideration, in good faith, and without notice, either actual or constructive; that the deed was executed on *Sunday?* We are clear in the opinion that he cannot.

The evidence shows that at the instance of *Wells*, both the deed and the justice's certificate of acknowledgment were ante-dated, to make it appear that the deed was a valid one, and upon its face it did so appear. In this condition it was delivered to the railroad company, and sent to be recorded. *Wells* abandoned the possession of the land and claimed no interest in it. Under these circumstances, it appearing from the deed that the railroad company had a perfect and indefeasible title to the land, *Carpenter* and *Love* purchased it for a valuable consideration, in good faith, and without any notice whatever that *Wells'* deed to the railroad company was executed on *Sunday;*

and still *Wells* gave them no notice of the fact, nor did he assert any claim or title to the land for years after they sold and conveyed it to *Smith.* Under these circumstances, if *Wells* can be allowed to reclaim the land by showing that the deed is void because it was executed on *Sunday,* it will be permitting him, by his own unlawful act, to perpetrate a gross fraud upon innocent purchasers. To such an act the law will not lend its aid or give its sanction.

Mr. *Story* says: "No man can reasonably doubt that if a party, by the willful suggestion of a falsehood, is the cause of prejudice to another, who has a right to a full and correct representation of the fact, his claim ought, in conscience, to be postponed to that of the person whose confidence was induced by his representation. And there can be no real difference between an express representation, and one that is naturally or necessarily implied from the circumstances. The wholesome maxim of the law upon this subject is, that a party who enables another to commit a fraud is answerable for the consequences." 1 Story's Eq., § 384, p. 412. Here, *Wells,* by executing and delivering the deed to the railroad company, and intentionally giving to it a false date, so as to make it appear valid on its face, enabled the latter to practice a fraud on innocent purchasers. See, also, *Commonwealth* v. *Kendig,* 2 Penn. St. R. 448; *Bloxsome* v. *Williams,* 3 Barn. & Cress. 232; *Fennell et al.* v. *Ridler,* 5 *id.* 406; 2 Parsons on Contracts 765.

The judgment is reversed, with costs, and the cause remanded for a new trial, and for further proceedings not inconsistent with this opinion.

*W. E. Niblack* and *W. H. Wolf,* for appellants.

*R. A. Clements, jr.,* for appellee.