CASE 101—ACTION ON AN ALLEGED BILL OF EXCHANGE—JAN. 30.

# Gray Tie & Lumber Co. v. Farmers' Bank.

APPEAL FROM EDMONSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.. REVERSED.

BILLS AND NOTES—FOREIGN BILL—DRAFT BY AGENT ON PRINCIPAL—AC-
    CEPTANCE—NECESSITY AND SUFFICIENCY OF INDORSEMENT—EQUI-
    TABLE DEFENSES—EXECUTION ON SUNDAY—CONSIDERATION FOR
    TRANSFER.

Held:   1. A draft drawn in Kentucky on a person in another State, and payable there, is a foreign bill of exchange.

2 A draft drawn by an agent on his principal, by authority of the principal, is equivalent to a draft drawn by the principal on himself, and need not be accepted by the drawee in order to bind him.

3. Where a bill is transferred without indorsement, the transferee takes it subject to such defenses as were available against the payee.

4. The signature of the payee on the back of the draft attached to a bill of sale of the goods for the price of which the draft was made is not such an "indorsement" as will pass the legal title to the draft, especially where it is followed by the printed state-ment: "Draft not good unless above bill of sale is signed, and draft also properly indorsed."

5. The question whether the bill sued on had been properly in-dorsed was one of law for the court, and should not have been submitted to the jury.

6. The fact that the drawee had paid other drafts transferred with-out indorsement did not preclude him from making any de-

Gray Tie & Lumber Co. v. Farmers' Bank.

fense to the draft sued on which he might have made against the payee.

7. A bill drawn by an agent on his principal, and transferred by the payee without indorsement, is in legal effect merely the note of the principal, and subject, in the hands of the assignee, to all defenses which the principal had against the payee.

8. The surrender to the payee of a note against him is a sufficient consideration to support the transfer of a bill of exchange.

9. Where an agent drew a bill on his principal on Sunday, and antedated it, the principal will not be heard to say, as against a purchaser of the bill, that the date which his agent gave it was not the true one.

EDWARD W. HINES AND D. W. WRIGHT, ATTORNEYS FOR APPELLANT.

POINTS AND CITATIONS.

1. A bill drawn by a corporation on itself has the effect of a promissory note. 1 Parson on Notes and Bills (1st ed.), 288; 4 Thompson on Corporations, sec. 5124; Stafford v. Bratcher, 4 Ky. Law Rep., 996.

2. Defendant can not be held as drawer upon a draft signed by its agent in his own name. Wedekind & Co. v. Kennedy (Superior Court), 11 Ky. Law Rep., 256; Brown v. Parker, 7 Allen (Mass.), 337; Manufacturers & Traders' Bank v. Love, 13 App. Div. (N. Y.), 561.

3. That authority to draw may operate as an acceptance the bill must have been taken on the faith of such authority. Vance v. Ward, 2 Dana, 96; 2 Randolph on Commercial Paper, sec. 610.

4. A general authority to draw does not operate as an acceptance. Exchange Bank v. Hubbard, 62 Fed. Rep., 112.

5. Indorsement is necessary to constitute the holder a *bona fide* purchaser. 2 Randolph on Commercial Paper, sec. 988; Goshen National Bank v. Bingham, 118 N. Y., 394.

6. The indorsement of the payee's name is not sufficient to constitute the holder a *bona fide* purchaser unless it was made for the purpose of transferring title. Barnett & Wilhoyte v. Fort Pitt Natl. Bank, 19 Ky. Law Rep., 611.

JOHN M. WILKINS, ATTORNEY FOR APPELLEE.

POINTS AND CITATIONS.

Principal bound by acts of agent, done within the scope of apparent authority. Am. & Eng. Ency. of Law (1st ed.), vol. 1, sec. 13, p. 410; Tiedeman on Commercial Law, sec. 76, p. 137; Daniel

Gray Tie & Lumber Co. v. Farmers' Bank.

on Negotiable Instruments (2d ed.), vol. 1, secs. 289-290, p. 239; Story on Agency, pp. 115-116-126 and 127.

Commercially, the States of the United States are foreign to each other. See (Rice v. Hogan, 8 Dana, p. 134) Chenoworth v. Chamberlain, 6 B. M., p. 61.

Agency may be implied by previous acts of principal in ratification or approval. See Story on Agency, sec. 135; Lawson's Rights, Remedies and Practice, vol. 1, sec. 422.

Unnecessary to affix word "agency" to name of drawer, if previous conduct of principal in like transactions—in approving or ratifying such acts, or the paper itself shows the agency. See Daniel on Negotiable Instruments (2d ed.), vol. 1, sec. 30, p. 246.

The same party may be drawer and drawee of a bill of exchange, and when this is the case acceptance is not required to complete liability of drawee. See Daniel on Negotiable Instruments, vol. 1, sec. 482, p. 391; Tiedeman on Commercial Paper, secs. 20-128 and 218; 4 Ky. Law Rep., 996; 2 Bibb, 24; 8 Bush, 127; 7 J. J. Mar., 154; 2 Dana, 70; 78 Ky., 266.

J. S. LAY, ATTORNEY FOR APPELLEE.

1. The evidence shows that the cashier of the Farmers' Bank purchased the draft in good faith and paid dollar for dollar for it, and that he had cashed many similar drafts drawn by Neel in favor of Flora and on the defendant, and that all such drafts had theretofore been paid by the defendant.

2. Whilst the evidence shows that the draft was drawn on Sunday. it was antedated May 21, which was Saturday, and no one attempts to show that the purchaser had any knowledge that it was drawn on Sunday.

3. The evidence conclusively shows that Neel was the agent of the defendant and was known by the bank cashier to have authority to draw such drafts, and he had no knowledge of any limitation on such authority.

4. The evidence shows that this draft was held up an unusual length of time before it was returned to the bank, and this was a ratification of it by the defendant. 13 B. Mon., 396; 4 Met., 47; 26 Vt., 112; Am. & Eng. Ency. of Law, vol. 1, p. 387; 7 Bush, 245.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

The appellant is a citizen of Illinois, with its principal place of business at Evansville, Ind. Appellee is a pri-

vate banking firm in Kentucky. Appellant was sued by appellee upon the following draft:

"Cedar Bluff Mills, Kentucky.

$1,500.00.                                      May 21st, 1898.

"At sight, pay to the order of J. H. Flora fifteen hundred dollars, in full payment for—

| | The Old Dominion Bank of Evansville, Ind. No. ——. | |
|---|---|---|
| —— 1st class ties. | | —— 2d class ties. |
| —— 1st class ties. | | —— 2d class ties. |

—Which I have this day inspected, and received from J. H. Flora. —— advanced on ties in woods. Names of land named in contract for Gray Tie & Lumber Company, and have branded same with ——.

"C. W. NEEL.

"To Gray Tie & Lumber Co., Evansville, Ind."

This draft was upon a printed form, on the back of which appears the following (a printed form signed by the payee): "Have this day delivered to C. W. Neel, for Gray Tie & Lumber Co., the ties named in this draft, and said ties are free from all liens and incumbrances of any character; and I hereby agree to pay all landing or yard rent, bankage or wharfage on the ties named in this draft until said ties are removed. J. H. Flora."

Immediately beneath the signature above appears the following printed statement: "Draft not good unless above bill of sale is signed, and draft also properly indorsed."

The J. H. Flora named was a citizen of Kentucky at the time of the transactions herein recited, and within

two or three days after the date of the draft sold and delivered it to appellee, taking in exchange, and as consideration for its transfer, his note for $1,500 owing appellee, and on which it is stated were other solvent names as sureties. The draft, being forwarded in the usual channel for collection, was not paid on presentment. Thereupon this suit was instituted.

Appellant set up numerous defenses, among them the following: (1) The draft was executed on Sunday, but was antedated by the drawer and payee, and, being in violation of the Sunday statute, was void, not being a work of necessity or an act of charity, etc. (2) That Neel, the drawer, was not authorized by appellant to draw this draft, and appellant owed him nothing, and had no fund or property of his in possession. (3) That Neel, the drawer, was appellant's agent in buying and receiving railroad ties, and that the payee, Flora, fraudulently and falsely, and with intent to deceive appellant's agent, represented to him that he, the said Flora, had 17,000 to 20,000 of ties in the woods at a certain point designated, the agent relying on the statements as true, and not knowing otherwise, when in fact Flora had not the ties named, or any considerable part thereof, and thereby committeed a fraud upon appellant and his agent, the draft being in consideration of the sale to appellant of the number of ties named. (4) Appellant denied that appellee had purchased or discounted the draft for value, and denied that it had been indorsed to the bank by Flora.

It is necessary that the last-named plea should be sustained before any of the others, save the second, could be considered by the jury. We may say that the States of the Union are "foreign," each to the other, for the purpose of fixing the character of bills of exchange. There-

fore a draft drawn in Kentucky upon, and payable by, a person in Indiana, is a foreign bill of exchange, and if sold or discounted for value, and indorsed to an indorsee, it is not subject to the defenses interposed in the four grounds first named, if the drawer had authority, as the drawee's agent, to draw this draft. It is alleged, and we think sufficiently proven, that Neel was the agent of the drawee, the Gray Tie & Lumber Company, engaged for it in the business of buying, receiving and paying for ties, and to draw drafts on his principal therefor. This being true, it was equivalent to a draft drawn by the drawee on itself, and consequently an acceptance by the drawee was not necessary to bind it. A foreign bill of exchange, under the law merchant, is negotiable, so as to prevent defenses, after it has passed into the hands of innocent purchasers, for value, by the methods recognized and provided by the law. An indorsement of a bill, made payable to order, is as essential to this end as is any other necessary attribute of the bill. In 1 Daniel, Neg. Inst., 'section 641, it is stated that, where a bill payable "to order" is transferred without endorsement, the transferee takes, not the legal, but only the equitable title. "The holder can only stand in the shoes of his assignor, and recover subject to such defenses as were available against him, although he took it in good faith for value." Id., section 664a. And this was held to be equally true; although the failure of the payee to indorse was by his mistake. Bank v. Bingham (N. Y. App.), (23 N. E., 180). In the early case of Instone v. Williamson, 2 Bibb, 83, this court stated the distinction between a transfer by "assignment" and by "indorsement." Certain notes and other choses were by the act of 1748 made "assignable." It was contended in that case that they could not be transferred by assign-

ment on another piece of paper, or otherwise than by "indorsement," as provided in the law merchant. Said the court, in noting the distinction: "We are aware that bills of exchange could be transferred only by indorsement, which *ex vi termini* means an assignment on the back of the instrument."

The question then arises whether the matter on the back of this bill, signed by the payee, is an "indorsement," within the meaning of the law. The customary method of indorsing a bill of exchange is merely the writing the name of the indorser on the back of the instrument, where an unqualified indorsement is intended. The law then implies the contract intended by this act, which, extended, would be that the indorser "intends to incur the liability of a party who warrants payment of the instrument, provided it is duly presented to the principal at maturity, not paid by him, and such fact is duly notified to the indorser." 1 Daniel, Neg. Inst., section 666. He impliedly "engages (1) that the bill or note will be accepted or paid, as the case may be, according to its purport, but this engagement is conditioned upon due presentment or demand and notice; he also engages (2) that it is in every respect genuine; (3) that it is the valid instrument it purports to be; (4) that the ostensible parties are competent; (5) and that he has lawful title to it, and the right to indorse it." Id., section 669a. This is the contract, and the only contract, the law imputes to the indorser by his act. He makes this contract to the indorsee or subsequent holder, not to the antecedent parties to the instrument. He may enlarge this contract by waiving protest or notice of it. He may diminish the implied contract by special matter inserted above his signature showing such a purpose. In the case at bar it is earnestly argued that the holder, the

bank, had the right to fill in with appropriate words, above Flora's signature, the contract above implied. This would undoubtedly have been true had Flora merely signed his name across the back of the instrument. But it can not be said that the holder can make a contract entirely different from the one intended by the payee when he signed the writing quoted. He did not leave it to conjecture or implication what was intended. On the contrary, he merely asserts, for the benefit of the drawee of the paper, and as an assurance concerning the consideration thereof, that he has delivered ties to the drawee's agent, and will not claim wharfage or bankage on them. The statement appears complete in itself, bears not the slightest resemblance to, or suggestion of, the contract of indorsement, and, furthermore, is made directly to the drawee, and not to any indorsee. The construction put by the parties themselves upon this statement, that it was not an indorsement, is the printed statement below it that the draft is not "good unless the above bill of sale is signed, and draft is also properly indorsed." As was said by the court in Instone v. Williamson, *supra*, indorsement is included in "assignment," as a species of the genus; the distinction being that "indorsement," under the law merchant, was as above set forth, while "assignment" might be by such indorsement or by a separate instrument. Therefore an indorsement not only implies the particular contract above set out, but it operates as a transfer of the payee's title to the bill. Could it be contended that Flora, by the execution of the writing on the back of this bill, thereby parted with his title to it? Appellee did not so regard the effect of its appearance; for it joined Flora as a party defendant, and properly so, if the bank took only the "equitable title" to it. If that bill, as it appears in the

record, had been lost, and found and presented for payment by a stranger, would it have been a protection to the drawee to have honored it in the hands of another than the payee? Yet, if appellee's argument that Flora had properly indorsed it is well founded, it thereby became payable to bearer.

It is not infrequent that extraneous matter is indorsed or written upon a bill. When done, generally it is taken to be merely a memorandum (1 Daniel, Neg. Inst., section 170) for the use of the original parties. So, in this case, this matter appearing on the back of the bill, though signed by the payee, appears clearly to be but a memorandum, neither affecting its integrity, nor complying with the legal requirements of an indorsement; and all who may handle it are so notified and must take notice of the printed statement that follows to that effect. Bank v. Ewing, 78 Ky., 266. Parol evidence was not admissible to enlarge or to vary the legal effect of the writing sued upon. And the fact, if it was a fact, that appellant sometimes paid drafts without indorsement, can not be held to change the law giving negotiable qualities to certain paper. The question whether the bill had been properly indorsed in this case was one of law, and the court should not have submitted it to the jury under an instruction to find for the plaintiff if they believed from the evidence that Flora had, "before it was presented for payment, sold, transferred, and assigned it to plaintiff." From the lack of an indorsement by the payee, the paper lost the quality of a negotiable instrument that was not subject to defenses available to the drawee as against the original payee. We think this paper may be properly described in the language used by the superior court in Stafford v. Bratcher, 4 Ky. Law Rep., 996: "If an order drawn by

an agent on his principal be tested as if drawn by the principal on himself, it is, in legal effect, a promissory note, and liable, in the hands of an assignee, to all defenses which the principal had against the payee." The surrender of Flora's note by the bank was a sufficient consideration for the transfer. Smith v. Lockridge, 8 Bush, 427.

We think it was immaterial that the bill was drawn on Sunday. Appellant's agent drew it, and antedated it, and that, we have held, is equivalent to appellant's own act. Not having retracted it, but suffered it to be sold, appellant can not now be heard to say that the date its agent gave it was not the true one.

Upon a return of the case, the question of Flora's alleged fraud, as affecting the consideration of the bill sued on, should be submitted to the jury, under appropriate instructions.

There was another issue made by the pleadings as to whether appellee did not agree with appellant, subsequent to the protest of the $1,500 draft sued on, to surrender it in consideration of a certain $750 draft and $388 draft drawn on appellant by its agent in favor of Flora, and alleged to have been assigned by him to appellee. We think instructions Nos. 3 and 5 given the jury properly submitted to them that question. The judgment below is reversed, and cause remanded for proceedings consistent herewith.

Petition for re-hearing by appellee overruled.