# Moseley *v.* Selma National Bank.

## *Detinue.*

(Decided Dec. 19, 1911.   57 South. 91.)

1. *Sunday; Notes Made on; Vadilily.*—A note made and delivered on Sunday is void, and cannot be subsequently ratified.

2. *Bills and Notes; Bona Fide Purchaser; Sunday Contract.*— Where a note and mortgage to secure it were executed on Sunday, but dated as of a secular day, and an innocent purchaser took them for value without notice before maturity, the maker is estopped to defeat an action thereon by the purchaser.

3. *Mortgages; Transfer; Title of Transferee.*—Where a note and a mortgage *securing it* were transferred by the payee by endorsing the note in blank and delivering it and the mortgage to the transferee, the legal title to the chattels covered by the mortgage passed to the transferee.

4. *Appeal and Error; Harmless Error; Evidence.*—Where in detinue for personal property covered by the mortgage held as collateral security, there was no controversy about the execution of the note and mortgage, and the hypothecation agreement, the method of proving the signatures, if erroneous, was harmless.

5. *Same.*—Where the transferree of a chattel mortgage brought an action against the mortgagor in detinue for the chattels covered by the mortgage, the transfer having conveyed the legal title, any error in admitting evidence of the hypotechation agreement involving the transfer was not prejudicial to the mortgagor, since the right to recover did not rest on the agreement.

APPEAL from Dallas Circuit Court.

Heard before Hon. B. M. MILLER.

Detinue by the Selma National Bank against L. H. Moseley. Judgment for plaintiff and defendant appeals. Affirmed.

ARTHUR M. PITTS, for appellant. The court erred in overruling the demurrers to replication of No. five to pleas No. 5, 6 and 7.—Code of 1907, Section 3346; *Burns & Company v. Moore & McGee,* 76 Ala. 339; *Anderson v. Bell,* 87 Ala. 334; *B. T. I. S. Co. v. Curry et al.,* 49 South. Rep. 319; *Alabama National Bank v. Parker,* 40 South. Rep.; *Hanover National Bank v. Johnson,* 90 Ala. 552; *Boyett v. Standard Chemical & Oil Co.,* 41 South. Rep. 756; 15 Amer. & English Enc., 1014, page 15. The court erred in overruling demurrers the replications of No. six to pleas No. (5), (6) and (7).—Code of 1907, Section 3346; *Burns & Company v. Moore & McGee,* 76 Ala. 339; *Anderson v. Bell,* 87 Ala. 334; *B. T. & S. Co. v. Curry* et al., 49 South. 319; *Alabama National Bank v. Parker,* 40 South. Rep. *Hanover National Bank v. Johnson,* 90 Ala. 552; *Boyett v. Standard Chemical & Oil Co.,* 41 South. Rep. 756; 15 Amer. & Eng. Enc., 1014, page 15. The court erred in permitting the witness Fuller, over the objections of the appellant, to answer the following question: "Did Mr. Moseley admit his signature to the note and mortgage." The note and mortgage being dated on the 3rd day of January, 1910, and payable to the Schwarz Commission Company.—*Russell v. Walker,* 73 Ala. 315; Code of 1907, Section 4006; *Sledge v. Singley,* 37 South. Rep., page 98.

PETTUS, JEFFRIES, PETTUS & FULLER, for appellee. Having dated the note as of a secular day, although it was made and delivered on Sunday, the maker was estopped to assert that it was made on Sunday where the note had passed into the hands of an innocent purchaser for value without notice.—2 A. & E. Enc. of Law, 129; *Beverly v. Smith,* 1 Wash. 297; *Holmes v. Shynock,* 1 Wash. 390; *Manning v. Manning,* 8 Ala.

138; *Ivey v. Nicks,* 14 Ala. 564; *Finn v. Barclay,* 15 Ala. 692; *Prescott Bank v. Butler,* 32 N. E. 909; *Frame v. Fabler,* 52 S. W. 1015; 60 S. W. 537; 83 N. E. 861; 50 Pac. 218; 22 N. W. 278; 9 Am. Rep. 45; 48 Ia. 228.

PELHAM, J.—The rulings on the pleadings in the trial court raise the question on this appeal as to whether or not the maker of a negotiable note that is void because of having been made and delivered on Sunday, but which is dated by the maker on a secular day, is estopped from pleading the illegality of the note in bar of recovery in a suit brought by an endorsee who acquired the note before maturity, and for a valuable consideration, without notice of its illegality.

The appellee brought an action of detinue against the appellant based on a mortgage given by the appellant to the Schwarz Commission Company on personal property sought to be recovered in this suit. The commission company, a firm doing an advancing business, transferred the mortgage, and note secured by it, to the appellee bank as collateral security, along with other notes and mortgages to secure a loan made by the bank to the commission company. The note was indorsed to the bank in blank by the payee at the time of its hypothecation, together with the mortgage, and both note and mortgage were delivered to the bank before maturity, for a valuable consideration, under a hypothecation agreement, together with other collateral securities, not connected with this suit. The note and mortgage were executed and delivered on Sunday, January 2, 1910, but were dated by the maker or payee, with the maker's knowledge and consent, on a secular day, to wit, the following Monday, January 3, 1910. The mortgage was recorded several days after its execution, and, after being recorded and before maturity, was transferred to

the appellee in the due course of business.   The complaint is in the code form for the recovery of specific property.   The defendant filed pleas of the general issue, made a suggestion, under the statute, that the suit was based on a mortgage, with request to ascertain the amount due on the mortgage, and also filed a plea of payment and three special pleas, setting up the fact that the mortgage and note were executed and delivered on Sunday, and therefore were void.   To these special pleas, the plaintiff filed replications, averring, in substance and effect, that plaintiff purchased the note and mortgage in the due course of business from the original payee for a valuable consideration, before maturity, and without notice or knowledge of any defense existing between the original maker and payee, and that the defendant was estopped from pleading that the note was executed and delivered on Sunday and void, for the reason that it had been falsely dated by defendant on a secular day, for the purpose of holding it out as a valid transaction to induce persons to deal with it as such, and that plaintiff had so dealt and purchased it in good faith, believing it to have been executed and delivered on a secular day, as on the face of the paper purported to be the fact.   Demurrers to these replications were overruled, and the court's action in overruling the demurrers is assigned as error.

It has been the settled law in this state for many years that a note made and delivered on Sunday cannot be enforced; nor will a subsequent ratification validate it, as it was originally void.—*Shippey v. Eastwood,* 9 Ala. 198.   Chief Justice Collier, however, in referring to such contracts in rendering the opinion of the court, in *Saltmarsh v. Tuthill,* 13 Ala. 390, 406, says: "It has been repeatedly determined that a penalty inflicted by statute upon the doing of an act is equivalent to a pro-

hibition, and a contract relating to it is void. See *Ship-pey and Another v. Eastwood,* 9 Ala. 198, 200. Under the influence of this rule, it has been decided that a contract made on a Sunday is void, and a security founded on it is not recoverable at the suit of a party to the illegal consideration. But, as the act does not declare that both the contract and security are void, the authorities clearly indicate that a bona fine indorsee of negotiable paper, founded upon such a contract, who acquires it before maturity, without notice of the illegality, for value, may enforce its payment."

The case of *Saltmarsh v. Tuthill* is cited by the court in rendering its opinion in the case of *Cranson v. Goss,* 107 Mass. 439, 9 Am. Rep. 45, in support of this proposition, declared by that case to be the law: "But it is also agreed that the note bears date of a secular day; and that the plaintiff is a bona fide holder of the note, for a valuable consideration, and took it before it came due, without notice of any defect, illegality, or other infirmity in the same. The plaintiff, therefore, not having participated in any violation of law, and having taken the note before maturity, for good consideration, and without notice of any illegality in its inception, may maintain an action thereon against the maker. To hold otherwise would be to allow that party, who alone had been guilty of a breach of the law, to set up his own illegal act as a defense to the suit of an innocent party. This view is supported by the judgments of all courts, English and American, that have considered the question."

The opinion in the case of *Saltmarsh v. Tuthill* is criticized in *Burns v. Moore,* 76 Ala., 339, 52 Am. Rep. 332, and *Anderson v. Bellinger,* 87 Ala. 334, 338, 6 South. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46, and the statute in force at the time of the prior decision pro-

nounced less "sweeping and vitiating in its effect;" but
the distinction drawn in the latter case is placed on the
adjudication in the first case having been related to a
negotiable instrument, which "depended for the result
reached on the general principle which frees commer-
cial paper from infirmities of which subsequent holders
have no notice."—*Anderson v. Bellinger, supra.*

On the proposition of estoppel as applied to the hold-
er of commercial paper, it is said by the justice render-
ing the opinion of the court in *Knox v. Clifford*, 38
Wis. 651, 20 Am. Rep. 28: "We hold this rule: That
when a party makes and puts in circulation a ne-
gotiable note purporting to be made and bearing date
on some secular day, he is estopped, as against an in-
nocent holder, from showing that it was actually exe-
cuted and delivered on Sunday. We cannot well con-
ceive of a stronger case for the application of the doc-
trine of estoppel than such a case presents."

We find the following holding in *Johns v. Bailey*, 45
Iowa, 241: "In the case before us, the plaintiff caused
the contract to be dated as though it had been executed
on a secular day. By this act, the defendants may have
been misled and induced to believe that the defense now
made to the contract did not in fact exist. While giving
all the appearance of legality to his contract, plaintiff
cannot set up its illegality to protect himself against
the instrument, when in the hands of a good-faith hold-
er, without notice. He is estopped to deny the validity
of the instrument, when he, by his own act, has given it
such character." The last-mentioned case is cited ap-
provingly in *Leightman v. Kadetska*, 58 Iowa, 676, 12
N. W. 736, 43 Am. Rep. 129, where the court in passing
on a case involving the same principle, uses this expres-
sion: "It is only against a person in equal fault that a
defendant can be allowed to allege his own turpitude."

In the case of *Vinton v. Peck,* 14 Mich. 287, the court says: "This note bore upon its face a legal date, which was placed upon it for the express purpose of obtaining credit for it as a lawful instrument; and it would certainly be valid in the hands of a bona fide holder." And, referring to the rule protecting a bona fide holder, the court further says: "And, apart from this rule, where steps are taken to induce a belief that a note was not made on Sunday, we should not be prepared to hold that a party could assert his own fraud in his defense."

In *Love v. Wells,* 25 Ind. 503, 87 Am. Dec. 375, the court held that, assuming that a deed was delivered on Sunday, and void, the party who executed it and gave it a secular date could not set up the invalidity of the deed against a subsequent vendee, who purchased the land for a valuable consideration, in good faith, without notice of the transaction having been had on Sunday. To allow the defendant such a defense would "be permitting him, by his own unlawful act, to perpetrate a gross fraud upon innnocent purchasers. To such an act the law will not lend its aid, nor give its sanction."—*Love v. Wells, supra.*

Many authorities support the proposition that, notwithstanding promissory notes and other instruments executed on Sunday are void, yet, if they are falsely dated as of another day, and an innocent person takes them for value and without notice, the maker is estopped from setting up that defense in a suit by an inno- cent purchaser without notice. See *Ball v. Powers,* 62 Ga. 757; *Harrison v. Powers,* 76 Ga. 218; *Bank v. Mayberry,* 48 Me. 198; *Bank v. Thompson,* 42 N. H. 369; *Trieber v. Graves,* 48 Iowa, 228; *Gray Tie Co. v. Bank,* 109 Ky. 694, 60 S. W. 537; *Ban v. Furman,* 4 Pa. Super. Ct. 415; *Heise v. Bumpass,* 40 Ark. 545; *Greathead v. Walton,* 40 Conn. 226; *Bank v. Butler,* 157 Mass. 548,

[Moseley v. Selma National Bank.]

32 N. E. 909; *Gordon v. Levine,* 197 Mass. 263, 83 N. E. 861, 15 L. R. A. (N. S.) 243, 125 Am. St. Rep. 361.

The great weight of authorities seem to hold that one who gives to an instrument a legal date, thereby authorizing innocent parties to deal with it as such, cannot be heard to deny the legality of date in a suit against him by an innocent holder, who came into possession as a bona fide purchaser for value without notice. It would seem that this rule, as applicable to commercial paper, is essentially just, and based on sound reason. By intentionally giving a negotiable note a false date, the maker holds it out and represents it to be a valid instrument, and invites all parties to deal with and treat it as his legal act and binding obligation. Giving the note a false date for this purpose, if not an express representation of its validity that would estop the maker from denying its legality of date as against an innocent holder, is a representation necessarily implied from the circumstance, and there is no real difference between the express and implied representation. As said by Mr. Story (Story's Eq. Jur., § 384) : "There can be no real difference between an express representation and one that is naturally or necessarily implied from the circumstances." The representation or assertion, to create an estoppel, need not be express, but may be implied.—Bigelow on Estoppel, vol. 1, § 6. If the false representation, either express or implied, induced the one who becomes the innocent holder to be deceived and part with a valuable consideration for what he honestly believes to be the legal obligation of another, then it is to protect such a one that the law of estoppel operates to close the mouth of the other party against setting up his own fraudulent act to defeat the right of the one who has innocently acted on the false representation and put himself in a position of disadvantage. It is this

principle that distinguishes the cases cited by appellant from the case under consideration. In the case of *Burns & Co. v. Moore & McGee,* 76 Ala. 339, 52 Am. Rep. 332, the suit was between the original parties to the transaction, and there was, and could be in that case, no question of estoppel, as the parties were in pari delicto and the maxim applied: "In pari delicto potior est conditio defendentis et possidendis."

The cases of *Hanover National Bank v. Johnson,* 90 Ala. 552, 8 South. 42, and *B. T. S. Co. v. Curry,* 160 Ala. 370, 49 South. 319, 135 Am. St. Rep. 102, each hold that a note resting on a contract declared void by statute cannot be enforced, even by a bona fide purchaser for value, without notice and before maturity. But the question of false representation by the maker to induce a purchase of the notes did not arise in either; and therefore the doctrine of estoppel was not applied or taken into consideration in the opinions of the court. The former case involved the collection of a note given for commercial fertilizer, and the contract for the sale and delivery was void, under the statute, for noncompliance with the tax tag provisions. Had the maker of the note accompanied the payee to the bank and represented that the note was given for a horse, or for some other legal consideration, or had he stated such fact in the face of the note, and had the bank acted on the assertion and purchased the note in good faith, for value, could the maker afterwards be heard to allege his own turpitude in defense of an action by the bank on the note? We do not think so.

The latter case was a suit on a note founded on a gambling contract, and the consideration was in itself illegal and void, and a different rule might well apply; but, should the maker of a note founded on a gambling consideration induce an innocent person, by assurance

that the obligation was valid, to invest his money in a purchase of the note, could the maker set up his own wrong to defeat a recovery at the hands of the innocent holder? Or would not the maker, having by false representation induced the purchase, be estopped from pleading his own wrong against him whom he had deceived into parting with a valuable consideration? See *Manning v. Manning,* 8 Ala. 138; *Finn & Dulaney v. Barclay et al.,* 15 Ala. 626, 629. We state this, however, only as a query, without passing on the question, as it is unnecessary to a decision of the instant case. For the consideration in that case is void, whereas in the case before us the consideration is not void, and it is only the act of the parties that makes the transaction void; or, as the distinction is expressed by some of the law writers, "is void applied to the contract and not to the parties."

The case of *Anderson v. Bellinger & Ralls,* 87 Ala. 334, 6 South. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46, is not in point, and does not touch the question of estoppel here presented. That was as action on a statutory claim bond, and it is said in that case that the statute against Sunday contracts then in force (Code 1886, § 1749) "is more sweeping and vitiating in its effect" (quoting from *Burns v. Moore, supra*) than the statute in force (Act. 1803) at the time of the decision in *Saltmarsh v. Tuthill, supra.* It is held that transactions in violation of the Sunday statute are void, and that the statute inures to the benefit of third parties, including public officers; but the question of estoppel, as invoked by the appellee in the case at bar, is not passed on or considered, as that proposition was not before the court.

The other cases cited by appellant to sustain his contention (*Ala. Nat. Bank v. Parker,* 146 Ala. 513, 40

South. 987, and *Boyett v. St. Ch. & Oil Co.,* 146 Ala. 554, 41 South. 756) were suits for the collection of notes given for commercial fertilizers that had not been tagged as required by law. In the first case (*Bank v. Parker, supra*), the court holds that, as the note rests for a consideration on a void contract, it cannot be collected in the hands of a bona fide purchaser for value, without notice, and cites the case of *Bank v. Johnson, supra,* in support of the holding. The question of estoppel did not enter the case. In the latter case (*Boyett v. Oil Co.*), the court, in the opinion delivered, considers the question of estoppel only in so far as it applied to the defendant waiving his right to plead the illegality of a void contract because of his *subsequent* inconsistent acts after having entered into the contract. The facts before the court in that case on which a waiver or estoppel was claimed related to the defendant's right to set up the invalidity of the notes, because he had gone to trial on an issue made under his pleas to the common counts setting up payment of the demand sued on by executing notes for the claim. Under these conditions, the plaintiff in that suit contended that he was entitled to the general charge on the counts based on the notes, because the defendant was estopped by his pleas of payment and going to trial on that issue on the common counts from denying the validity of the notes. The court held that interposing the pleas of payment constituted no estoppel or waiver as to the counts declaring on the notes.

The question presented in this case is not one of waiver or estoppel growing out of some subsequent action of the defendant, whereby the plaintiff is not induced to change his position, and is put at no disadvantage as in that case, but is a question of estoppel arising from the original representations made by one

of the parties to a transaction, on which the other party relies in parting with a valuable consideration; the innocent party to the transaction being led by the false representations of the other party into a position of disadvantage. In such a case, the doctrine of estoppel has uniformly been held to operate and prevent the wrongdoer from asserting his own wrong against the claims of an innocent party, who had been led to change his position to one of disadvantage by the false representations of the other party to the transaction. "Whenever a man has made false assertions calculated to lead others to act upon it, and they have done so to their prejudice, he is forbidden, as against them, to deny the assertion."—Estoppel and Res Judicata, Herman, vol. 1, § 6.

We think it safe to hold, as stated by Mr. Herman (Estoppel and Res Judicata, vol. 2, § 1027), that it is "*a general rule of law*" that all notes executed and delivered on Sunday are void between the parties; yet, if falsely dated as of another day, and such an instrument comes to the hands of an innocent holder, who takes it for value, before maturity, without notice, the maker is estopped, in an action on such instrument by the innocent holder, from setting up that it is not truly dated, and is a Sunday contract, and therefore void. To hold otherwise would be to invite fraudulent collusion between makers and payee of negotiable instruments, who at their will could give a false date to a negotiable note and invite its use in the commercial world, and then defeat its enforcement in the hands of an innocent purchaser for value, before maturity, by pleading their own perfidy.

From what we have said, it will be seen that the court's rulings on the defendant's demurrers to the plaintiff's replications were free from error, and that there was no error committed by the court in its oral

charge, or in refusing the special charges requested by the defendant. All the matters raised by these various assignments are related to the principal controversy fully discussed above. The other assignments are without merit.

There was no real controversy over the execution of the note, mortgage, and hypothecation agreement, and the mode of proving the signature, if irregular or even erroneous, was without injury. The defendant admitted execution of the note and mortgage, and the evidence was without conflict that the note was indorsed in blank by the payee, and the note and mortgage delivered to the appellee, before maturity, for a valuable consideration.

The legal title to the property described in the mortgage was in the appellee after the transfer, and an admission of the hypothecation agreement in evidence was not prejudicial to the interests of appellant, and, if error, was without injury, as appellee's right of recovery did not rest on the agreement. The rulings on the evidence assigned as error either go to matters not prejudicial to appellant on the issues before the court, or are not available because of the evidence sought to be elicited and excluded having been subsequently admitted. The note and mortgage having been dated on a secular day, which was testified by appellant (the maker) to be false, and, the appellee having been shown to have acquired the papers in the usual course of a banking business for a valuable consideration, without notice, before maturity, there was sufficient evidence to support the verdict under the pleadings, and there was no error in refusing the general charge requested by appellant. The assignments of error fail to show reversible error in the ruling of the trial court, and the case will be affirmed.

Affirmed.