(77 South. 866)

BAKER, LYONS & CO. v. AMERICAN AGRICULTURAL CHEMICAL CO.

(1 Div. 971.)

(Supreme Court of Alabama.    Nov. 15, 1917. Rehearing Denied Jan. 24, 1918.)

1. CHATTEL MORTGAGES ☞209 — ASSIGNMENTS—RIGHTS OF ASSIGNEES.

The transfer by indorsement or assignment of a note and the chattel mortgage securing it, though the transfer is for collateral security only, prima facie passes to the transferee the legal title to the mortgaged chattels.

2. CHATTEL MORTGAGES ☞209 — ASSIGNMENTS—RIGHTS OF ASSIGNEES.

On default in payment of the mortgage debt the transferee of a chattel mortgage may exercise all the rights of the mortgagee, including the right to take and hold possession of the chattels.

3. CHATTEL MORTGAGES ☞170(1), 173(1)—ACTIONS OF TRESPASS, TROVER, OR DETINUE — RIGHT TO MAINTAIN.

Though a chattel mortgagee or his transferee had only an equity, and not the legal title, still a delivery of the mortgaged chattel to either of them thus uniting the equity with the possession gave such a title as will support trespass, trover, or detinue against a third person.

4. CHATTEL MORTGAGES ☞209—POSSESSION—RIGHTS OF ASSIGNEE.

Plaintiff sold fertilizer to a merchant who sold it to farmers and took from them notes and mortgages on their crops and other personalty as security, and by a prearrangement trans-

ferred the mortgages to plaintiff as collateral security. Subsequently plaintiff redelivered the notes and mortgages to the merchant under an agreement whereby it appointed the merchant its trustee to collect the notes and mortgages for it. *Held* that, when the merchant received cotton from the several mortgagors for sale and credit on their accounts, his possession was the possession of plaintiff.

5. FACTORS 47(2, 4)—LIEN—PRIORITY.

Cotton factors to whom cotton was consigned acquired a lien as against the consignor not only for advances made immediately upon the cotton, but also for any general balance due on accounts growing out of similar dealings, but such lien was subordinate to an outstanding legal title or to a paramount equity of which the factor had notice before his lien attached by virtue of his possession.

6. CHATTEL MORTGAGES 138(1) — LIEN — PRIORITY—FACTOR'S LIEN.

Where a transferee of chattel mortgages redelivered them to the mortgagee for collection as its trustee, and when cotton was delivered to him by the mortgagors for sale and credit on their account he consigned the cotton to cotton factors, plaintiff's legal title acquired prior to the factors' possession as such was superior to their claim based on their lien as against the mortgagee.

7. CHATTEL MORTGAGES 136 — ESTOPPEL — FAILURE TO ASSERT CLAIM.

The transferee's knowledge that the mortgagee would place the cotton with the factors for storage or even for sale on the transferee's account could not estop it from asserting its rights in the cotton or its proceeds, that being the usual course of dealing, especially as the contract between the factors and the mortgagee requiring him to ship to them all cotton raised, handled, or controlled by him carried a sufficient warning to them that cotton so shipped might be the property of third persons, and where it did not appear that he represented to the factors that the cotton in question was his individual property, and it did appear that, although his agreement required him to turn over all collaterals to them, he turned over no collaterals for the cotton in question.

8. ESTOPPEL 110—NECESSITY OF SPECIALLY PLEADING.

An estoppel not specially pleaded cannot be asserted.

Appeal from Law and Equity Court, Mobile County; Saffold Berney, Judge.

Assumpsit by the American Agricultural Chemical Company against Baker, Lyons & Co., a partnership, and as individuals. Judgment for plaintiff, and defendants appeal. Affirmed.

The gravamen of plaintiff's case is that defendants, who are cotton factors, sold and converted to their own use about 130 bales of cotton, which were the property of plaintiff. The complaint contains several counts for money had and received, a count in trover, a count in trespass, and several counts for conversion, with a statement of the facts. Count 5 is as follows:

Plaintiff claims of defendants the further sum of $7,500 for that heretofore, to wit, in the latter part of the year 1914, one E. N. Amos, who had previously assigned to and hypothecated with the plaintiff to secure an indebtedness owing by the said Amos to the plaintiff in the sum of, to wit, $8,620.60, sundry mortgages given to him by various people, and who had been appointed by the plaintiff as plaintiff's agent to collect the indebtedness secured by said mortgages for the plaintiff, and who had received as payments on many of said mortgages from the respective makers thereof, to wit, 130 bales of cotton covered by one or more of said mortgages, and had credited each of the parties delivering the said cotton with the value thereof upon the indebtedness secured by the mortgage of the party making such delivery, collection in that manner having been authorized by plaintiff, delivered the cotton so collected and received, to wit, 130 bales, to the defendants, who were then doing business as cotton factors in the city of Mobile, Ala., and the defendants during, to wit, the month of January, 1915, sold to bona fide purchasers for value, to wit, 111 bales of the said cotton, and retained the proceeds thereof, applying the same as a credit upon an indebtedness then owing by the said Amos to the defendants, all to the hurt and injury of the plaintiff in the sum herein claimed, wherefore plaintiff sues.

Besides the general issue and the statute of limitations for one year, defendant pleaded several special pleas, the general substance of which is shown by plea 3, which is as follows:

That defendants are cotton factors doing business in the city of Mobile, Ala., and have been doing such business for more than five years preceding the filing of this suit; that some time in the month of, to wit, March, 1914, E. N. Amos, who was engaged in the general merchandise business at Brooklyn, Ala., made arrangements with defendants to provide for the extension of an indebtedness then due and owing defendants and to secure additional moneys and advancements for the purpose of carrying on his business during the year 1914; that as security therefor the said E. N. Amos promised and agreed to ship to the defendants all cotton which he would raise, handle, or control during the season of 1914; that in pursuance of said arrangements, and in consideration of the security offered, the defendants advanced the said E. N. Amos large sums of money during the said year of 1914, and that defendants had no notice of any lien whatsoever which may have been claimed by the plaintiff, but that they sold said cotton on, to wit, the 8th day of January, 1915, and applied the proceeds as a credit to the indebtedness arising by reason of the said transaction had with the said E. N. Amos. They further allege that there is still due and owing them a large sum of money, to wit, $11,000. They further allege that they had the right to make such application of the proceeds by reason of the lien existing in their favor as cotton factors.

The following facts are substantially undisputed: The plaintiff company sold fertilizer in the spring of 1914 to one Amos, a merchant, who sold it to farmers, and took from them notes and mortgages on their crops and other personalty as security. By a prearrangement Amos transferred, assigned, and delivered these mortgages to plaintiff as collateral security for its account against Amos, said transfer being made July 21, 1914. On September 24, 1914, said notes and mortgages were redelivered to Amos under the following written agreement with him:

"The American Agricultural Chemical Company, a corporation, hereby constitutes and appoints E. N. Amos of Brooklyn, Ala., its trustee for the express purpose of collecting the notes, mortgages, and accounts hereinafter listed, and said company does hereby authorize and

empower said trustee to cancel and render said notes and mortgages upon payment of the same to him. * * *

"I, E. N. Amos, do hereby acknowledge receipt of the foregoing note, mortgages, and accounts (and accept the trust), holding myself ready to pay said company the proceeds of said notes and mortgages at any time as collections shall be made thereon, or upon demand made upon me therefor."

Thereafter, in the fall of 1914, Amos received 115 bales of cotton from the several mortgagors covered by the mortgages, besides 13 bales for a half interest only. As each lot of cotton was delivered to Amos he agreed with the several mortgagors that the mortgages should be credited with the value of the cotton delivered, and credit was afterwards given by him on the basis of the sales of the cotton afterwards made by defendant, to whom he delivered the cotton, on his own account. On March 4, 1914, Amos executed to defendants, Baker, Lyons & Co., his promissory note aggregating $25,000, to cover existing indebtedness for farm advances, and also present and future advances of money, said notes containing the provision:

"I also agree as part of the consideration hereof to ship Baker, Lyons & Co. all the cotton I raise, handle, or control during the season of 1914."

Under this agreement, and also an oral agreement to turn over his collateral securities to defendant, Amos shipped to them a large quantity of cotton, including the bales here in question during the fall of 1914, and defendant sold it about January 12, 1915, and credited the proceeds to Amos' account. Defendants had mortgages as collateral security covering some of the cotton received from Amos, but not for any of the lot claimed by plaintiff. Plaintiff's agent made demand on defendants on the morning of January 12, 1915, for the cotton or the proceeds of such as may have been sold, which demand was refused. The court, sitting without a jury, found that defendant had no notice of any claim prior to January 12, 1915, but on the evidence rendered judgment for plaintiff for the sum of $3,867.29. The bill of exceptions does not show that it contains all the evidence for the court.

Hunter H. McClelland, of Mobile, for appellants. Stevens, McCorvey & McLeod, of Mobile, for appellee.

SOMERVILLE, J. [1, 2] The transfer by indorsement or assignment of a note and the chattel mortgage securing it, though the transfer is for collateral security only, prima facie passes to the transferee the legal title to the mortgaged chattels. Tison v. People's, etc., Ass'n, 57 Ala. 323; Moseley v. Selma Bank, 3 Ala. App. 614, 57 South. 91; Graham v. Newman, 21 Ala. 497; 7 Cyc. 55. And upon default in payment of the mortgage debt the transferee may exercise all of the rights of the mortgagee-transferor, including,

of course, the right to take and hold possession of the chattels. 7 Cyc. 58, C.

[3] Even if the mortgagee or his transferee have not the legal title, but only an equity, yet a delivery of the mortgaged chattel to either of them, thus uniting the equity with the possession, gives such a title as will support trespass, trover, or detinue against a third person. Bryan v. Smith, 22 Ala. 534; Abraham v. Carter, 53 Ala. 8, 11.

[4] Unquestionably plaintiff, as transferee of the notes and mortgages covering this cotton, acquired the legal title thereto, and after the law day acquired also the right to its immediate possession. And when the mortgagee, Amos, received the cotton from the several mortgagors for sale and credit on their accounts, his possession was the possession of his principal, the plaintiff company.

[5] Defendants, as factors and consignees of Amos, acquired a lien, as against Amos, not only for advances made immediately upon this cotton, but also for any general balance due on accounts growing out of similar dealings. Martin v. Pope, 6 Ala. 532, 41 Am. Dec. 66; Mauldin v. Armistead, 14 Ala. 710; Swilley v. Lyon & Baker, 18 Ala. 552, 559; Barnett v. Warren, 82 Ala. 557, 2 South. 457. But it is thoroughly well settled that such a lien is subordinate either to an outstanding legal title, or to a paramount equity of which the factor has notice before his lien attaches by virtue of his possession.

"The liens which the law creates in favor of agents, and factors, and carriers, in the interest of trade and commerce, operate only on the right and title of those with whom they deal. If they have no title, or a qualified, conditional title, it is the misfortune of those who trust them. * * * There are other hard and distressing cases of advances made honestly and fairly by auctioneers and commission merchants upon a pledge of goods by persons apparently having the right to pledge, but who in fact had not any such right, and the pledgees have been subjected to the loss of them by the claim of the rightful owner. These are hazards to which persons in business are continually exposed by the operation of this universal principle that a man's property cannot be taken from him without his consent." Booker v. Jones, 55 Ala. 266, 276; Barnett v. Warren, 82 Ala. 557, 2 South. 457.

And in an early case it was said:

"If the principal part with his title before the factor obtains possession, he cannot charge the goods with the advances made the principal, without the consent of him who is the owner of the goods." Swilley v. Lyon & Baker, supra; 19 Cyc. 162 (V).

[6] These principles are conclusive of all the questions raised upon the pleadings and upon the trial. The legal title to the cotton acquired by plaintiff prior to defendants' possession as factors must prevail against defendants' claim based upon their lien as against Amos; and it results that, whether upon the common counts, or upon the special counts in trover, plaintiff is entitled to recover the value of the cotton, or its proceeds in the hands of defendants.

Appellants' contentions are founded entire-

ly upon the theory that the complaint and the evidence show only an equitable title in plaintiff; in short, that Amos merely pledged them the cotton covered by the mortgages. On the contrary, the mortgages were transferred to plaintiff, and with them the legal title to the cotton.

[7] Neither the pleadings nor the evidence show any knowledge by plaintiff that defendants had received the cotton as the property of Amos, or that they would make advances thereon in that belief after receiving the cotton as factors. Certainly, plaintiff's knowledge that Amos would place the cotton with defendants for storage, or even for sale on plaintiff's account, could not estop plaintiff from asserting its rights in the cotton or its proceeds; for that was the usual course of dealing. It is worthy of notice also that the very terms of defendants' contract ,with Amos, requiring him to ship to them all the cotton he "raised, handled, or controlled," carried a sufficient warning to them that any cotton so shipped might be the property of third persons, which Amos could not deal with as his own. Nor does it appear that Amos represented to defendants that this particular cotton was his individual property, either as original owner or mortgagee, or that it was other than merely controlled by him as agent. Indeed, the fact that he did not turn any collaterals over to defendants for this cotton, in view of his agreement to turn over all collaterals he might own, would naturally lead to the conclusion that he had none or.had otherwise disposed of them.

As Amos did not claim to be the owner of this cotton, and did not use the mortgages intrusted to him by plaintiff as evidence of his personal ownership of or interest in the cotton, it is difficult to see how defendants can, upon any theory of the law, set up the claim of purchasers for·value without notice, to the defeat of plaintiff's rights.

[8] But in any case an estoppel not specially pleaded cannot be asserted, and no such plea was offered.

We think the case was tried in accordance with the law, and that the judgment rendered is fully supported by the evidence.

Let the judgment be affirmed.

Affirmed. ·

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.