## MATTHEW W. MILLER v. FREDERICK LYNCH.

CONTRACT: SUNDAY LAWS: NOTE MADE ON SUNDAY VOID.—A promissory note executed on Sunday to secure the payment of a balance found due by the maker upon a statement made on that day, of transactions which previously took place between the parties, is void under the statute of this State. See Hutch. Dig. 946, § 4.

ERROR to the Circuit Court of Copiah county.   Hon. John E. McNair, judge.

*Wiley P. Harris*, for plaintiff in error.

The apparent diversity in the decisions of the several States on the subject of contracts made on Sunday, will be found to result from the difference in the terms and scope of their several statutes.

Sabbath-breaking tested by the Scriptures is one thing, and sabbath-breaking as denounced by temporal laws and statutes is another. There is no such thing as a public policy covering the whole scope of the scriptural injunction.   Under the common law, *judicial* proceedings of any kind were not allowed any validity if transacted on Sunday, but the prohibition did not extend any further.

Any act of ordinary business if valid on any day, would be valid on Sunday.   Statute laws came in to make exceptions to this rule, and the principle which governs their construction is the same which controls the construction of other penal or criminal laws. They are limited to the acts which they prohibit.

Miller *v*. Lynch.

The contract must be prohibited in terms or by necessary impli-
cation, or must have connection with or be founded on an act de-
clared unlawful. To determine whether a particular act is unlawful
because done on the sabbath day, we must look to the statute to see
if it is prohibited. If the making of a promissory note is not for
the purpose of inducing the act denounced, nor founded on an act
forbidden to be done on Sunday, it is valid, because the statute has
not said it is unlawful. No indictment could be predicated on
the fact of making a promissory note on Sunday, because it is not
within the terms of the statute. It will be seen that this is the test
in all cases.

If the act is not comprehended in the terms of the prohibition,
it will be held valid. The general doctrine on the subject will be
found very fully considered in *Geer* v. *Putnam*, 10 Mass. 312,
and note; *Story* v. *Elliot*, 8 Cowan, 27; *Boynton* v. *Page*, 13
Wendell, 425.

The Alabama statute and that of Connecticut, and most of the
New England States, contain the general prohibition against "all
worldly business," or "all secular business;" and under this gene-
ral language, contracts are held to be embraced. Revised Statutes,
Conn. 561; Clay Ala. Dig. 592.

Our statute, Hutch. Code, 946 (the note was made February,
1857), prohibits "laboring at a trade or calling." The cases cited
will show how such language has been construed in England and in
this country. Our statute is substantially like that of Kentucky;
and the case of *Ray* v. *Cattlet*, 12 B. Monroe, 532, decides that the
making of a note on Sunday is not within the prohibition.

The words "all secular business," or "worldly business," in
Alabama, has been held to embrace contracts, but our statute is
not so broad. 25 Ala. 528.

In the present case, the note was a mere closing by acknowledg-
ment contracts made prior to the day on which it was given. The
contracts were not invalid, and the consequence is, that we must
hold that the execution of a note and delivering it on Sunday, is
an indictable offence, as coming under the terms "working at a
trade or calling;" a construction which will not, we think, be
adopted. It has not been adopted elsewhere under similar statutes.

The note was in the nature of payment of past indebtedness. It

could not be said that it was a violation of the statute to receive a note or bill of exchange, or money in payment, on Sunday.

No counsel appeared for defendant in error.

HANDY, J., delivered the opinion of the court.

This was an action on a promissory note, the defence to which was, that it was executed on Sunday, in violation of the statute prohibiting labor by any person in any trade or calling on the sabbath day.

It appears by the bill of exceptions, that the note was executed under these circumstances : The plaintiff came to the defendant's house on Sunday, the 22d February, 1857, to settle some accounts between them, and to get the defendant's note for a wagon which the plaintiff had previously sold him; and that, when they had settled the accounts on that day, the defendant then gave the plaintiff the note sued on, which was for the price of the wagon, and the balance due the plaintiff on the settlement of the accounts between them.   And upon this evidence, the court instructed the jury, that if they believed from the evidence that the note was made and executed by the defendant to the plaintiff at his request, on Sunday, to secure to the plaintiff a balance found due to him by the defendant, upon a settlement of accounts made on the same Sunday on which the note was given, then the note was made in contravention of the statute, and they should find for the defendant.   The only question presented for our decision is the propriety of this instruction.

Upon the statute of England, 29 Car. II, ch. 7, § 2, which enacted that "no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business, or work of their ordinary callings upon the Lord's day, or any part thereof, (works of necessity or charity only excepted)," it appears to be settled, that in order to bring any particular act under the condemnation of the statute, it must have been done in the exercise of the "ordinary calling" of the party implicated in it. *Drury* v. *Defontaine*, 1 Taunt. 131; *Bloxome* v. *Williams*, 3 Barn. & Cres. 232; *The King* v. *The Inhabitants of Whitnash*, 7. Ib. 596.   But it is also held, that the statute is not confined to public acts, and

that acts done in private, in the exercise of the ordinary calling of a party, were within its scope; for "that labor might be private and not meet the public eye, and so not offend against public decency, but it was equally labor and equally interfered with a man's religious duties;" and "that every species of labor, business, or work, whether public or private, in the ordinary calling of a tradesman, artificer, workman, laborer, or other person, is within the prohibition of the statute." *Fennell* v. *Ridler*, 5 Ib. 406 (11 Eng. Com. L. Rep.).

The statutes of several of the States of this Union are more comprehensive than that of 29 Charles II, and prohibit in their terms, "worldly business or employment,"—"all secular business," &c. This is the case in Alabama, Pennsylvania, and Connecticut, in which States it is held that a promissory note executed on Sunday, is in violation of the statute, and therefore void. *Dodson* v. *Harris*, 10 Ala. 566; *Kepner* v. *Keefer*, 6 Watts, 231; *Fox* v. *Abel*, 2 Conn. Rep. 548.

Our statute in force at the time this note was made, is also broader than the English statute. It enacts, that "if any person on a sabbath day, called Sunday, shall himself be found laboring at his own or any other trade or calling, or shall employ his apprentices, servants, or slaves in labor or other business, except it be in the ordinary household offices of daily necessity, or other work of necessity or charity, he shall forfeit and pay the sum of $200 for every such offence." Hutch. Code, 946, § 4.

This statute differs from that of England, in not confining the acts and business prohibited to the particular trade or calling of the party committing the acts; for he is prohibited by it from "laboring at his own or *any other trade or calling;*" and it is clear, from the reasoning of the cases in England, that any other secular business than the particular trade or calling of the party, would have been held in England to be included, if the statute there had contained the phraseology of our statute. Nor can it be doubted, that the prohibition of the above quoted section of the statute is not restricted to such trades and callings as are carried on openly and publicly in shops or establishments, set up and kept for the purpose; for that is the subject of special prohibition in the fifth section. But, besides this, the terms of the English statute, which

are equivalent to those of the fourth section of ours, were held to apply to a farmer selling his corn, or a servant ploughing his land. *The King* v. *Inhab. of Whitnash*, *supra*, per Holroyd, J. And in the sense of the statute, both in England and this State, the term "calling" means the ordinary employment in which a man is engaged in prosecuting or attending to his worldly business. It was the manifest intent of these statutes to prohibit parties from employing themselves in such worldly avocations on the sabbath day.

It does not appear what was the particular calling or avocation of the plaintiff. But it is shown that he had sold a wagon to the defendant, and that he went to his house on Sunday to settle some accounts with him, and to get his note for the price of the wagon; that the settlement of accounts then took place, which resulted in the execution of the note, which included the price of the wagon and the balance due upon the settlement of accounts. In the absence of all proof, it must be presumed that the transactions thus settled pertained to the ordinary calling of the plaintiff; for a man's business transactions generally arise from the calling in which he is engaged. Hence, when he settles his accounts with a party, with whom he has had several dealings, it must be presumed that the transactions were in the course of his ordinary calling, and that the settlement pertained to his usual business or employment. Such a settlement necessarily requires "labor," within the meaning of the statute, and comes fully within its prohibition.

We think that the instruction is correct, and the judgment must be affirmed.