2957.  WILSON *v.* McEACHERN.

A postdated check, or one which bears a date subsequent to that of its actual issue, is payable on or after the day of its date, being in effect the same as if it had not been issued until that date; but in the meantime it is a negotiable instrument, and the drawer can not be charged by garnishment as debtor of the payee, unless it affirmatively appears at the time of rendering judgment against the garnishee that the check has become due, and is still the property of the payee.

DECIDED AUGUST 4, 1911.

Garnishment; from city court of Statesboro—Judge Brannen. August 25, 1910.

*Fred T. Lanier,* for plaintiff in error.

*R. Lee Moore,* contra.

HILL, C. J.  On July 6, 1907, McEachern sued out an attachment against Mrs. Zada Ingraham. This attachment was on the same day levied by service of summons of garnishment upon Wilson, plaintiff in error. His answer denying indebtedness was traversed and the jury sustained the traverse. The garnishee's motion for a

new trial was overruled. In support of the traverse the following facts were proved: In March, 1907, Wilson, the garnishee, being indebted to Mrs. Zada Ingraham in the sum of $480, paid this indebtedness by cash and a due bill, and on July 4, 1907, he took up this due bill from Mrs. Ingraham, giving her therefor his check on the Bank of Statesboro. There is some slight question in the evidence whether this check was for $240 or $283, and also some slight question whether the check, was dated July 4, 1907, or was a postdated check, dated October 1, 1907. The jury were fully authorized to believe, from the evidence, that the amount of the check was $283, and that it was issued and delivered by Wilson to Mrs. Ingraham on the 4th day of July, 1907, and was actually dated October 1, 1907. When the summons of garnishment was served on Wilson July 6, 1907, Mrs. Ingraham had the check in question in her possession, and on or about July 12th she made an effort to get the bank upon which the check was drawn to cash the same, but the bank refused to cash it, on the ground that it was postdated. On July 16, 1907, the J. W. Olliff Company, at the instance of Perry Rountree, cashed the check for Mrs. Ingraham, after deducting from the amount thereof an account which she owed that firm, and, on the same day, the garnishee took up the check from the J. W. Olliff Company by giving his promissory note therefor for $283, due October 1, 1907. On the trial the judge, over the objection of the defendant, admitted the testimony of the bank officials that Mrs. Ingraham attempted to have the check cashed, and that the check was for $283 and was dated October 1, 1907. This evidence was admitted after preliminary proof that the garnishee, Wilson, had been served with notice to produce the check which he had given to Mrs. Ingraham for $283, and that he had not produced it. Objection was also made to the introduction of an entry from the journal of J. W. Olliff Company, showing that they had cashed the check in question on July 16, 1907, and that the garnishee had on that day taken up the check and substituted therefor his note due October 1, 1907, for $283. This entry was admitted after preliminary proof that the book on which it was entered was the book of original entries kept by J. W. Olliff Company. There is no merit in the objections made to the admissibility of the testimony, in view of the preliminary proof.

The following excerpt from the charge of the court is also excepted to: "I charge you further that if you find, from the evidence in this case, that the garnishee drew a check for the indebtedness existing at the time, on July 4, 1907, in favor of Mrs. Zada Ingraham, on the Bank of Statesboro, and you find that he parted from that check on July 4, 1907, and it was not regularly negotiated, and was dishonored and payment refused, then the garnishee would be liable, and the plaintiff would be entitled to recover in this case." It is insisted that this charge is error and does not state the law applicable to the evidence in the case. The charge objected to does not state the law applicable to the facts, and was calculated to mislead the jury. There was no evidence whatever that the check had been dishonored. The evidence did show that its payment was refused by the bank because the day of its date had not arrived, and it further discloses the fact that the check had been cashed by the J. W. Olliff Company for the payee, Mrs. Ingraham, before the day of its date. Now, a postdated check, or one which bears a date subsequent to that of its actual issue, is payable on or after the day of its date, being in effect the same as if it had not been issued until that date. The failure of the bank to pay the postdated check until the day of its date was not a dishonor of the check. It would not be dishonored unless it was presented on or after the day of its date and payment was then refused. And the fact that the bank refused to pay a postdated check before the day of its date would not of itself render liable the drawer of the check, who had been served with summons of garnishment before the day of the date of the check. While the drawer of a postdated check can be garnished as debtor of the payee with respect to the debt for which the check was given, no judgment should be rendered against the drawer of the check as garnishee unless it be affirmatively shown that at the time of the rendition of the judgment the check has become due, and is still the property of the original payee. A postdated check payable to the order of the payee is in effect a negotiable instrument, and, before this negotiable instrument is due, the maker thereof can not tell to whom he will owe it at maturity, because his obligation is not to pay it to any particular person, but to pay the holder at maturity, whomsoever he may be; and for the court to render a judgment against the garnishee as the debtor of the original payee

on such a negotiable instrument necessarily assumes that the payee was the holder of the note or check when the same fell due, and this the court can not assume to be the fact, for the instrument may in the meantime and before maturity have been transferred to an innocent bona fide holder for value, who, as such holder, would be protected in his title, notwithstanding the maker of the negotiable instrument had been served with summons of garnishment requiring him to answer what he was indebted to the payee, who may have been the owner of the negotiable instrument at the time of the service of the summons.

The rights of a purchaser for value before maturity and without notice are paramount to those of a garnishing creditor, and the doctrine of lis pendens does not apply to negotiable instruments not due, and the summons of garnishment on the maker of such an instrument does not impound the fund in his hands so that the transfer of the instrument in good faith before maturity would not defeat the claim of the creditor. *Mims* v. *West,* 38 *Ga.* 18 (95 Am. Dec. 379). The bank upon which the check in question was drawn had the right to refuse to pay it in July, because, by reason of its date, it was not to be paid until October; but this was no dishonor of the check. The payee of the check, it being a negotiable instrument, could transfer it before maturity, for value, and if the transferee took it without notice of any defect or defense, or of any summons of garnishment on the maker of the check, and bought it in good faith, paying value therefor, then the maker of the check could not, under the law, have been liable as garnishee. The maker of the check had the right to take it up and pay it in the hands of the transferee, even after the service of summons of garnishment had been made upon him, because the holder of the check was his creditor and not the original payee. We are inclined to think from the evidence that the jury might have inferred that the J. W. Olliff Company were not in fact bona fide holders of this check, but that in cashing it before its date they were endeavoring to aid Mrs. Ingraham, the original payee, in avoiding the effect of the summons of garnishment which had been issued in the case and served upon the drawer of the check. At least this question was, under all the circumstances, issuable. But the charge of the court ignored entirely the legal effect of the transfer of the check to J. W. Olliff Company, and eliminated from consideration

by the jury any position which J. W. Oliff Company· may have occupied as a bona fide transferee of the check, and in effect instructed the jury that they might find the garnishee liable on the check without reference to the intervening rights of a bona fide purchaser thereof before maturity. In .other words, under the charge of the court, the maker of this check may have been called upon to pay the check ·(that is, the debt represented by the check) once as garnishee, to the garnishing creditor, and again, as maker of the check, to the bona fide holder thereof. It is well settled that no judgment can be legally rendered against a garnishee unless such judgment when satisfied would protect him against a subsequent suit to recover the same debt.

Because of the error contained in the charge. excepted to, as above discussed, we are constrained to grant another trial.

*Judgment reversed.*