ALLEN & CO. *v.* MONROE COUNTY HAY EXCHANGE·

[86 South. 297. No. 21237.]

1. SALES. *Seller accepting telegraphed order in clear language cannot set up misunderstanding.*

Where goods are ordered by telegram, and the language of the telegram is free from ambiguity and easily understood, an acceptance of the order completes a contract, and the consequences of a breach of the contract cannot be avoided on the ground that the meaning of the telegram was misunderstood.

2. SALES. *Acceptance of order free from ambiguity completes a contract.*

Where an order is free from ambiguity, and contains nothing in its terms or language to mislead, an acceptance thereof completes a contract, and it is error to submit to the jury the question as to whether a contract was thereby consummated.

APPEAL from circuit court of Monroe county.

HON. C. P. LONG, Judge.

Action by the Monroe County Hay Exchange against Allen & Co., with counterclaim by defendant. Verdict and judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Leftwich & Tubb,* for appellant.

It is a palpable miscarriage of justice to permit the plaintiff in this case when hauled into court with a halter around his neck, to be heard to say that when he accepted Allen's offer for five cars of hay on June 22nd, that he was mistaken in what Allen meant and thought the telegram referred to some previous telegraphic correspondence had on the morning or early afternoon of the same day, and strange to say the court took the position that this was a question for the jury to determine as to whether or not the hay exchange ever intended to make contract to ship these five cars of hay to Allen. Let us take for a

moment the telegrams in question.   The first telegram which Allen & Company sent the hay exchange on that day read as follows:

"Birmingham Grain offers seventeen dollars.   Five cars choice alfalfa, shipment within ten days.   "Wire answer."

This was on the morning of June 22nd, at 12:23 P. M. The hay exchange sent the following answer to Allen & Company:

"Will fill your order for five cars hay."

This message was received at Birmingham by Allen & Company at 12:53 P. M. Allen & Company then concluded to buy five cars for its own account and sent the following telegram to the Monroe County Hay Exchange:

"Book us five cars choice alfalfa, seventeen dollars, delivered."

The hay exchange in answer to this telegram at 3 p. m. wired Allen as follows: · "We will ship five cars as per your wire today." This message was received at Birmingham at 3:28 in the afternoon.

We submit that this court will not permit Mr. Henley to play the "baby act" in any such fashion.   The first telegram received that day told him that Allen & Company, his broker in Birmingham, had obtained an offer from the Birmingham grain company for five cars of choice alfalfa. He, Henley, immediately wired that he would fill the order.   The next telegram received in the afternoon from Allen was to the effect "book us" five cars choice hay, anu to this Mr. Henley very promptly replied that he would ship the five cars.   It certainly did not require the operation of a very astute mind to determine the difference between the two telegrams from Allen & Company on that day.   One was that he had sold five cars of hay to the Birmingham Grain Company and the other was that he wanted to buy five cars for himself on his own account. Mr. Henley evidently understood this for he actually shipped one car of hay on this account to Allen & Company. It is true that afterwards he tried to get out of it on the theory that his boy made a mistake in shipping the car of

hay to Allen & Company instead of to the Birmingham Grain Company. This contract is plain on its face and calls for the delivery of five cars of hay, only one of which was shipped; there is certainly nothing in this for the jury to construe except as to the amount of damages that Allen & Company sustained by reason of the breach, and it was manifest and palpable error in the court to hold in substance that it was a question for the jury to determine as to whether or not Henly understood the matter. This ruling of the court is assigned for error at Nos. 4, 6 and 7, assignment of errors and is likewise referred to in assignment No. 8 in granting of the plaintiff's charges. The court's various rulings on these points may be found at pp. 102, 103 and 104 of the record.

We think the court should have granted the defendant Allen & Company a peremptory instruction to find a verdict for the defendant in such sum as the testimony, disclosed would compensate the defendant for the plaintiffs breach to ship four cars of hay covered under the contract of June 22nd as shown by the difference in the market value at the time of the purchase and the time the breach occurred.

*Paine & Paine* for appellee.

This case, as the court will observe, was tried by a jury. The jury returned a verdict for appellee on all issues. There is no error of law in the case, either as to the charges or as to the various rulings of the court. The charges covered every legal phase of the case. We therefore submit that the case should be affirmed.

If, as contended by counsel for appellant, the court was in error as to the law with reference to question as to whether or not the telegrams made out contracts for appellant (all of which questions however were submitted to the jury), yet we respectfully submit the plea of accord and satisfaction was submitted to the jury under proper charges of the court and the accord and satisfaction was supported by a legal consideration, and the jury found on

this issue for the appellee. So we respectfully submit, this question having been settled in favor of the appellee, it forever settles all other questions as to whether or not there was a contract for the ten cars of hay as claimed by appellant. We can admit for the sake of argument, that the testimony for appellant made out a case showing contracts for two five car shipments of hay, yet we contend, these contracts were disputed in good faith by appellee, and this disputed matter was settled between the appellant and appellee, and for a valuable consideration the appellant released the appellee from all damages for the alleged breach of the contracts. This in our opinion will prevent the appellant from making any complaint by this appeal.

But aside from all this, we respectfully submit that as to the question of whether or not there were any contracts made on the 22nd day of June, 1916, and the 5th of July, 1916, as represented by the two telegrams and answers, we submit that the appellee was entitled to a peremptory instruction as we asked for in the lower court but which was overruled by the court, our contention in brief is that the telegrams of date June 22nd and July 5th and the answers thereto, are not in themselves sufficient to comply with the statute of frauds. "Memorandum to satisfy the statute must contain the substantial terms of the contract, expressed with such certainty that they may be understood from the contract or some other writing to which it refers without resort to parole evidence." See *Floyd Wills* v. *W. C. Ellis*, 98 Miss. 197. "The requirement of the statute of frauds of a note or memorandum in writing of the bargain signed by the party to be charged, is not satisfied by telegram containing an order for the purchase of goods, and a reply, unless the telegrams taken together and without the aid of parole testimony show the substantial terms of the bargain including the price."

See *Frank* v. *Eltringham*, 65 Miss. 281; *Rector Prov. Co.* v. *N. & W. Sauer*, 69 Miss. 235.

An inspection of these telegrams will convince the court of the applicability of the law and will convince the court

that the peremptory instruction asked by appellee should have been granted.

The first telegram sent by appellant is as follows: "Book us five cars choice alfalfa, seventeen dollars delivered."

And the second telegram, sent July 5th is as follows: "Book us five cars choice alfalfa seventeen. What about three cars due, wire answer."

Neither of these telegrams state how much alfalfa is to be sold, to-wit, how many tons in the car, and neither telegram states whether the hay is to be seventeen dollars per ton or seventeen dollars per car, and the second telegram is even more objectionable than the first as it simply says "seventeen." What does it mean? Seventeen dollars a ton, seventeen dollars a car, or seventeen cents a ton, or what? The court will further observe that it required parole testimony of appellant to show what these telegrams meant, how much hay was in a car, etc.

It is true it may be contended there was a delivery of one car on the first contract; but it is shown without dispute that this delivery was due to a mistake on the part of the fourteen-year-old son of E. W. Henley as the car was intended for the Brimingham Grain Company.

So we respectfully submit the appellant has not been injured and has no just cause for appeal and that the case should be affirmed. Respectfully submitted.

WILLIAM H. COOK, J., delivered the opinion of the court.

The Monroe County Hay Exchange sued Allen & Co. in an action of attachment on open account for the proceeds of three cars of hay collected and retained by it. The defendant, Allen & Co., denied the indebtedness and filed a set off and counterclaim for damages accruing to it by reason of the failure and refusal of the plaintiff to ship other cars of hay alleged to have been purchased from plaintiff and resold, thereby making it necessary for the defendant to go into the market and buy hay at greatly increased prices. Upon the trial of the debt issue there was a verdict and judgment for plaintiff, and defendant appeals.

The Monroe County Hay Exchange is a corporation engaged in buying and selling hay, and appellant, ALLEN & Co., composed alone of C. A. Allen, was engaged in the brokerage business in the city of Birmingham, Ala. During the year 1916 the Hay Exchange sold to or through Allen numerous carloads of hay, which were either consigned to him or shipped to buyers designated by him, and he was paid a commission for each car sold.

This controversy grows out of certain contracts alleged to have been made by the telegraphic correspondence hereinafter set out: On the morning of June 22, 1916, Allen & Company wired the Hay Exchange as follows:

"Western Union Telegram.

"6-22-16.

"To Monroe County Hay Exchange, Prairie, Mississippi. Birmingham Grain offers seventeen dollars five cars choice alfalfa, shipment within ten days, wire answer.

"ALLEN & COMPANY."

This message was at once answered by the Hay Exchange as follows:

"Prairie, Miss. 12-23 P. M. June 22, 1916.

"Allen & Company, Birmingham, Ala. Will fill your order for five cars hay.

"MONROE COUNTY HAY EXCHANGE—12—53PM."

On the same day, after he had wired the order for five cars for the Birmingham Grain Company, appellant sent appellee the following telegram:

"Birmingham, Ala. 6—22—16.

"To Monroe County Hay Exchange, Prairie, Miss. Book us five cars choice alfalfa seventeen dollars delivered.

ALLEN & COMPANY."

Upon receipt of this second telegram appellee wired the following answer:

"Prairie, Miss. 3—10 PM. June 22, 1916.

"Allen & Company, Birmingham, Ala. Will ship five cars as per your wire today.

"MONROE COUNTY HAY EXCHANGE—3—28PM."

Again on July 5, 1916, Allen & Co. ordered five other cars of hay, sending the following telegram:

"Birmingham, Ala. 7—5—16.

"To Monroe County Hay Exchange, Prairie, Miss. Book us five cars choice alfalfa seventeen. What about three cars due. Wire answer.

ALLEN & COMPANY."

And on the same day Allen & Co. received the following reply to this last telegram:

"Prairie, Miss. 7—5—16.

"To Allen & Company, Birmingham, Ala. Will ship balance due at once and book five more.

MONROE COUNTY HAY EXCHANGE."

The appellee Hay Exchange failed and refused to ship the five cars ordered by Allen & Co. on June 22d and also refused to ship the five cars ordered July 5th. In all of these transactions the Hay Exchange was represented by E. L. Henley, secretary and treasurer of the corporation, and when introduced as a witness he testified that he was the only person authorized to act for the corporation in buying and selling hay. He admitted the receipt of the telegrams of June 22d, and admitted sending the acceptances, but excused his failure to ship the hay on the ground that he understood both the telegrams of June 22d to refer to the five cars ordered for the Birmingham Grain Company.. As to the five cars ordered on July 5th he testified that he was away from his office on that day, that no one was left at the office who had authority to accept an order, that the telegram of acceptance of that date was unauthorized, and that when he returned home about the 12th or 13th he found these telegrams on his files, and immediately repudiated this acceptance by letter addressed to Allen & Co.

Appellant contends that the telegrams of June 22d completed a valid and binding contract with appellee to ship five cars of hay to the appellant, and the action of the court in submitting to the jury the question as to whether or not the contract was consummated by these telegrams is assigned as error. The first telegram sent on June 22d was an order for hay to be shipped to a designated party, and

the telegram of acceptance constituted a completed contract. The second telegram, received three hours later, was unambiguous and easily understood, and was an order for five cars of hay to be shipped to a different person or firm. There was nothing in its terms or language to mislead the agent of appellee, and if he was uncertain as to its meaning or purpose he could have easily protected his company by an inquiry, or by so wording his answer as to limit his acceptance to the one order from the Birmingham Grain Company. If by negligence or inattention he construed the telegram to mean something wholly at variance with its express terms, he should not be permitted to take advantage of his inattention to the damage of the other party who was without fault. *Coats & Sons* v. *Bacon & Co.,* 77 Miss 320, 27 So. 621; *Thompson* v. *Ray,* 46 Ala. 224; *Fidelity & Casualty Co. of New York* v. *Teter,* 136 Ind. 672, 36 N. E. 283; *Grymes* v. *Sanders,* 93 U. S. 55, 23 L. Ed. 798; Cyc. vol. 9, pages 398-399.

Under the facts in evidence here we think the telegram of June 22d, ordering five cars of hay to be shipped to appellant, and the acceptance thereof, consummated a binding contract, and that instruction No. 7, submitting to the jury the issue as to whether a contract was consummated by these telegrams, was error. There is a sharp conflict in the evidence about the supposed contract growing out of the telegrams of July 5th, and the repudiation thereof, but all these controverted facts were submitted to the jury under proper instructions.

We find no error in any of the other rulings of the court, but for the error herein indicated the cause is reversed and remanded.

*Reversed and remanded.*