Currie-McGraw Co. *v.* H. & J. Friedman.[*]

(Division B. May 26, 1924. Suggestion of Error Overruled June 9, 1924.)

[100 So. 273. No. 24080.]

1. Bills and Notes. *Maker of note bearing date of secular day estopped as against innocent holder to show execution on Sunday.*
   When a party makes and puts in circulation a negotiable instrument purporting to be made and bearing date of a secular day, he is estopped as against an innocent holder from showing that it was actually executed and delivered on Sunday.

2. Bills and Notes. *Postdated instrument negotiable.*
   The fact that a negotiable instrument was postdated does not destroy its negotiability or permit the making of the defenses existing between the original payer and payee.

3. Bills and Notes. *Failure to place federal revenue stamps on instrument does not affect negotiability.*
   The failure to place the proper revenue stamps on a negotiable instrument in accordance with the federal law does not render it nonnegotiable in this state.

4. BILLS AND NOTES. *Payee's negotiation of instrument in violation of agreement with payer no defense as against innocent purchaser for value without notice.*

The fact that a negotiable instrument was negotiated by the payee in violation of his agreement with the payer is no defense to a suit by an innocent purchaser for value without notice.

*Headnote 1. Bills and Notes, 8 C. J., section 1034; 2. Bills and Notes, 8 C. J., section 192; 3. Bills and Notes, 8 C. J., section 205; 4. Bills and Notes, 8 C. J., section 1016.

APPEAL from circuit court of Lafayette county.

HON. THOS. E. PEGRAM, Judge.

Suit by the Currie-McGraw Company against H. & J. Friedman. Judgment for defendants, and plaintiff appeals. Judgment reversed, demurrers to pleas sustained, and case remanded.

*Montgomery & McClure,* for appellant.

On inspection of the five pleas demurred to by the plaintiff it is observed that no reference is made therein that the plaintiff knew or had notice of the facts set out and relied on as a defense in this suit. This being true, the plaintiff in this case who sues the defendants as a *bona-fide* holder for value could not be defeated in his suit by defenses which he did not know about and which existed and were known exclusively between the payee, Cramer, and the drawer of the check, the defendants in this suit.

I. *Can a party put in circulation a check bearing a legal date and as against an innocent holder for value without notice show that it was actually executed and delivered on Sunday?*

There are three reasons why this defense cannot be maintained which are as follows: (1) The Negotiable Instruments Law itself denies it; (2) The Sunday Law has been impliedly repealed in so far as it conflicts with

the Negotiable Instruments Law, and (3) The law of estoppel. Sections 52 and 57 of the Negotiable Instruments Law. *Mitchell* v. *Campbell,* 111 Miss. 806, was decided prior to the adoption of the Negotiable Instruments Law in Mississippi and hence not controlling.

The case of *Elkin Henson Grain Company* v. *White,* 98 So. 531, should be overruled only to the extent and in so far as this decision conflicts with section 57 of the Negotiable Instruments Law, and destroys the force and effect of same. A great number of the states of the Union have followed the doctrine that: "Illegality ceases to be a real defense under the Negotiable Instruments Law unless made so by a subsequent statute, and that the statutes previously in force declaring void, instruments given for gaming or upon usurious interests or other forbidden transactions are impliedly repealed by the Negotiable Instruments Law." These cases are as follows: *Wirt* v. *Stubblefield,* 17 App. D. C. 283; *Schlesinger* v. *Kelly,* 114 App. Div. 546, 99 N. Y. Supp. 1083; *Broadway Trust Company* v. *Manheim,* 47 Misc. Rep. 415, 419, 95 N. Y. Supp. 63; *Schlesinger* v. *Lehmaier,* 191 N. Y. 69, 73, 83 N. E. 657, 658, 16 L. R. A. (N. S.) 626, 123 Am. St. Rep. 591; *Klar* v. *Kostiuk,* 65 Misc. Rep. 199, 119 N. Y. Supp. 683; *Horowitz* v. *Hollowitz,* 59 Misc. Rep. 520, 110 N. Y. Supp. 972; *Olser & Company* v. *Behrend,* 89 Misc. Rep. 391, 151 N. Y. Supp. 873; *Wood* v. *Babbitt,* 149 Fed. Rep. 818, 822. See, also, the opinion of Willard Bartlett, J., in *Schlesinger* v. *Gilhooly,* 189 N. Y. 1, 81 N. E. 619. See *Washer* v. *Smyer et al.,* 211 S. W. (Texas) —, 4 A. L. R. 1320.

We respectfully submit to this court, that the statutes in Mississippi, to-wit: Sections 1102, 1103 of Hemingway's Code, which make it a misdemeanor for merchants etc., to engage in work on Sunday or to sell merchandise, etc., do not in any manner or form declare that a note, contract, check or other paper which is given in payment of goods, wares or merchandise sold on Sunday shall be

void; nor do these two sections in any manner or form suggest or imply that payment shall not be recovered for such goods or wares or merchandise sold so as to further suggest that a check given in payment for the same would be impliedly held void under the statutes.

Therefore, in view of the decision of the case of *Elkin Henson Grain Company* v. *White,* and in view of the great weight of authority of other states, we confidently assert that the defendants in this case cannot avail themselves of the plea that the check sued on in this case is void in the hands of a *bona-fide* purchaser for value without notice, because made on a Sunday, for the reason they cannot point to express declaration of the legislature that such unlawful act of the parties makes the check absolutely void.

II.    *Illegality of the Transaction.*

3 R. C. L., page 1016, par. 224, says: ''Illegality of consideration of a bill or note is a good defense in a suit between the original parties. It by no means follows, however, because a contract made in violation of law, common or statutory, is void between the original parties, that if given the form of negotiable paper it is void in the hands of a *bona-fide* holder.'' *Citizens Nat. Bank* v. *Nore,* 67 Neb. 69, 2 Ann. Cas. 604, 3 R. C. L., 1018, par. 226.

III.    *The Law of Estoppel.*

The party who makes the check cannot set up his own illegal act as a defense to a suit of an innocent party. This law is founded upon justice. The great weight of authority of other states is in accord with this principle. *Cranson* v. *Goss,* 107 Mass. 439, 9 Am. Rep. 45, held that a promissory note bearing the date of a secular day is valid in the hands of a *bona-fide* holder for value, although in fact made and delivered on the Lord's Day, and therefore invalid as between the original parties. This view is sustained by the following courts: *Saltmarsh*

*v. Tuthill,* 13 Ala. 390, 406; *Bank of Cumberland* v. *Mayberry,* 48 Me. 198; *Vinton* v. *Peck,* 14 Mich. 287; *State Capital Bank* v. *Thompson,* 42 N. H. 369; *Leightman* v. *Kadetsky,* 58 Iowa, 676, 46 Am. Rep. 129; *Meyers* v. *Kesslin,* 142 Fed. 730, 74 C. C. A. 62; *Trieber* v. *Commercial Bank,* 31 Ark. 128; *Clinton National Bank* v. *Graves,* 48 Iowa 288; *Clark* v. *Barthold,* 87 N. J. L. 255; *Know* v. *Clifford,* 38 Wis. 651, 20 Am. Rep. 28; *Waverly First National Bank* v. *Furman,* 4 Pa. Sup. 415, 5 R. C. L. 535, par. 57; *Gordon* v. *Leveine,* 197 Mass. 263, 83 N. E. 861, 125 A. S. R. 361, 15 L. R. A. (N. S.) 243; *Mosely* v. *Selma National Bank,* 57 So. (Ala.) 91. "The great weight of authorities seem to hold that one who gives to an instrument a legal date, thereby authorizing innocent parties to deal with it as such, cannot be heard to deny the legality of date in a suit against him as an innocent holder who comes in possession as a bona-fide purchaser for value without notice. It would seem that this rule is essentially just and based on sound reason and applicable to commercial paper." *Knox* v. *Clifford,* 38 Wis. 651, 20 Am. Rep. 28; *Leightman* v. *Kadetsky,* 58 Iowa, 676, 43 Am. Rep. 129; *Vinton* v. *Peck,* 14 Mich. 287; *Love* v. *Wells,* 25 Ind. 503, 87 Am. Dec. 375.

While this question has been decided in most of the states in the union, there has not been a single decision directly in point decided by our own court since the adoption of this act. The case of *Despres, Bridge & Noel* v. *Hough Drug Co.,* 123 Miss. 598, where a defense was made to the payment of a note that the payee, a corporation, had not filed its charter in this state as required by law, has a bearing however.

Our own court has held in the case of *Land* v. *Lacoste,* 5 Howard 471, that if the maker of a note says to a purchaser that he has no defense to the payment thereof, and that the note will be paid, he will be estopped to set up a defense in a suit for payment then existing but unknown to him. Again, in the case of *Montgomery* v. *Dil-*

135 Miss.—45.

*lingham,* 3 S. & M. 647, and in *Ayers* v. *Mitchell,* 3 S. & M. 683, if the maker of a note says that the note is just, that he considers it good against him, and that he expects to make satisfactory arrangement with the holder when it falls due, he is estopped in a suit for payment to set up a defense to the same.

IV. *Can a Failure of Consideration of a Check Between the Drawer and the Payee Therein Be Interposed as a Defense to Payment of the Check in the Hands of an Innocent Holder for Value Without Notice?*

Section 57 of the Negotiable Instruments Law expressly declares that a holder for value without notice takes the instrument free from every defense available to prior parties among themselves. See, too, *Despres, Bridge & Noel* v. *Hough Drug Company,* 123 Miss. 598; *Johnson County Savings Bank* v. *Yarbrough,* 106 Miss. 79; *First National Bank Iowa City* v. *John McGrath Sons,* 111 Miss. 782; *Huddleston* v. *McMillan Bros.,* 112 Miss. 168.

V. *Breach of Trust and Fraudulent Indorsement by the Payee of the Check.*

The authorities of several states are agreed that the drawer of a check, who places the same in the hands of the payee, and the same is indorsed by the payee to an innocent holder for value, cannot defeat payment by showing that the payee put the same in circulation in breach of a trust or in breach of an agreement and in fraud of his rights. 3 R. C. L. 1013, par. 221; 3 R. C. L. 298, par. 208, as well as par. 209 at 999 and 1000. Our own court so holds in *Despres, et al.,* v. *Drug Co.,* 123 Miss. 598; *Huddleston* v. *McMillan,* 112 Miss. 168; *First National Bank* v. *John McGrath & Sons,* 111 Miss. 782. See likewise the cases' reported in Brannan Negotiable Instruments Law, 64.

VI. *Will the Fact that a Post-Dated Check is Not Stamped in Accordance with the Acts of Congress, Carry*

*Notice on its Face to an Innocent Holder for Value, That There are Equities Existing Between Prior Parties to the Instrument?*

See *Sowell* v. *Rankin, et al.*, 120 Miss. 458; Sections 12, 56, of the Negotiable Instruments Law.

VII.  *Does a Post-Dated Check Carry Notice, Ipso Jure, to the World of All Defects and Equities Available to Prior Parties Among Themselves?*

See section 12 of the Negotiable Instruments Law; *Royal Bank* v. *Tottenham* (1894), 2 Q. B. 715; *Union Bank* v. *Tattersal* (1920), 15 Alberta L. R. 350. In the United States: *Wilson* v. *Mid-West State Bank,* 21 A. L. R. (Iowa) 229, is the only case which has come to our attention which is in conflict with the decisions in England as well as with those in this country and for this reason we especially desire to challenge this case for its position.

The following cases stand as authority for us on the proposition that a post-dated check does not carry notice on its face of its defects, if any, to an innocent purchaser for value received: *Trephonoff* v. *Sweeny,* 65 Ore. 209, 130 Pac. 979; *Albert* v. *Hoffman,* 64 Misc. Rep. 87, 117 N. Y. Supp. 1043; *American Nat. Bank* v. *Wheeler,* 187 Pac. (Cal.) 128; *Mayer* v. *Mode,* 14 Hun., 155; *Kuflik* v. *Vaccaro* (1918), 170 N. Y. Supp. 13; *Wilson* v. *McEachern* (1911), (Ga. App. 584), 71 S. E. 946; *Burnish* v. *Kahn,* 47 Mo. App. 215; *Walker* v. *Geisse,* 4 Whart. (Pa.) 252, 33 Am. Dec. —; *Johnson* v. *Harrison,* 177 Ind. 240, 39 L. R. A. (N. S.) 1207; *Symonds* v. *Riley,* 188 Mass. 470, 74 N. E. 926.

*L. C. Andrews,* for appellees.

The demurrer admits each and every fact alleged in the pleas demurred to. It is, therefore, admitted that the check sued on was made, executed and delivered on Sunday; that it was without consideration; that it was

procured through fraud; that it was to be held in trust until the performance of the contract; that the contract was made on Sunday; that the check was a post-dated check; that it was not stamped as required by the laws of Congress and was transferred before maturity.

I.  *Sunday Contracts are Void Ab Initio.*

A promissory note executed on a secular day as security for the price of property sold and delivered to the maker on Sunday is void under the statutes of this state. *Kountz* v. *Price,* 40 Miss. 341.

A promissory note executed on Sunday to secure the payment of a balance then found due by the maker upon a settlement of previous legal transactions is void under the statutes of this state. *Miller* v. *Lynch,* 38 Miss. 344; *Block* v. *McMurray,* 56 Miss. 217; *Dugan* v. *Champin,* 75 Miss. 441; *Strouse* v. *Lancourt,* 27 So. 606; *Whitehead et al.* v. *Coker,* 76 So. 485.

II.  Negotiable instruments or instruments declared negotiable, such as checks and notes, under the Negotiable Instruments Law, when executed on Sunday and made by statute void in their inception cannot be enforced in the courts of this state when in the hands of *bona-fide* purchasers? *Mitchell* v. *Campbell,* 72 So. 231; *Elkin Henson Grain Company* v. *White,* 98 So. 531; *Twentieth Street Bank* v. *Jacob,* Ann. Cases 1917D, 695; *Oscanyan* v. *Arms Co.,* 103 U. S. Otto. 261; *Kyser* v. *Miller,* 144 Ill. App. 316.

III.  Where an instrument, negotiable in form but declared void by statute reaches the hands of a holder for value without notice of defects and the maker does nothing to warn the public that it is defective or does something to mislead, such as giving the instrument a date other than its true date but not to defraud anyone, he is not estopped from making his defense. *Union National Bank* v. *J. M. Brown et al.,* 38 L. R. A. 503;

Daniel's Negotiable Instruments, sec. 197; *Coppell* v. *Hall,* 7 Wallace Rep. 558; *Plank* v. *Swift,* 8 A. L. R. 309.

IV. *Post-dated Checks, and Failure to Stamp Same as Carrying Notice That the Maker Has a Defense Thereto.*

"No case squarely in point has been brought to our attention, but the following afford some support for our conclusion. The presence of the stamp required is in itself evidence of good faith." *Farmers' Savings Bank* v. *J. W. Neel,* 21 A. L. R. 1122; *W. P. Wilson* v. *Mid-West State Bank,* 21 A. L. R. 233, 7 C. J. 701.

The court cannot for the sake of protecting someone claiming to be the innocent holder of negotiable paper lift the ban from Sunday contracts. The disappointment of an innocent holder of negotiable paper would not be as hurtful and injurious to the best interest of the state as the removal of the ban from such contracts.

We, therefore, conclude that the lower court was right in overruling the demurrer to the appellees' pleas and its action will be upheld by this court.

Argued orally by *James McClure,* for appellant and *L. C. Andrews,* for appellee.

SYKES, P. J., delivered the opinion of the court.

The appellant, plaintiff in the circuit court, brought suit against the defendants, a copartnership, for one thousand five hundred dollars with interest, based upon a check executed by these defendants payable to one P. E. Kramer or his order, and by Kramer properly made payable to appellant. The appellant accepted the check in good faith for value received. The declaration alleges the presentment of the check in due course for payment and the refusal of the bank to honor same at the instance and request of the defendants. The check is dated April 1, 1922. To this declaration there was a plea of the general

issue and several special pleas. These special pleas were demurred to by the appellant, the demurrers were overruled, the appellant declined to reply thereto, and judgment final was entered in favor of the appellees. From which judgment this appeal is prosecuted.

It becomes necessary to consider the sufficiency of these pleas. The first special plea demurred to alleges, in substance, that the check sued on was executed because of a contract which was made on Sunday between Kramer, the payee in the check, and the defendants; that the check itself was made and delivered on Sunday; and for this reason both the contract and check are void. Another special plea alleges that the check was delivered to the payee, Kramer, to be held in trust by him until Kramer had complied with a certain agreement, and that in disregard of this trust Kramer transferred the check to the plaintiff; and nothing was ever paid to the defendants by Kramer for the check. Another special plea in substance alleges the same facts. None of the above pleas deny that the plaintiff (appellant) was a holder in good faith for value. Another special plea alleges that plaintiff was not a holder in due course, because the check was postdated by a matter of six days when delivered by defendants to Kramer, and that the plaintiff received the check two days before its maturity; and that under federal law postdated checks are required to be stamped and canceled; that this check was not stamped and canceled and this failure put the plaintiff on notice of the defenses of defendant to the check which are stated in the above pleas. Another special plea merely alleges the fact that the check was postdated, received by plaintiff two days before its maturity date, and therefore plaintiff was put on notice of the defenses of defendant to this check.

From the contents of these pleas, there are two questions presented for decision:

(1) Is a check which bears a legal date, issued on Sunday, in pursuance of a business transaction and

agreement made on Sunday in violation of our Sunday law, void in the hands of a holder in due course?

(2)   Is a postdated check transferred to a holder before the due date, which does not contain proper revenue stamps duly canceled, subject to the defenses existing between the payer and payee?

Section 1102, Hemingway's Code (section 1366. Code 1906), makes it a misdemeanor to do certain work on Sunday. Under this law this court has held that notes executed on a secular day in compliance with contracts made on Sunday are void. *Kountz* v. *Price,* 40 Miss. 341. Likewise it is held that a promissory note executed on Sunday to secure payment of a balance found due is void. *Miller* v. *Lynch,* 38 Miss. 344.

We have examined all the decisions of this court which have been called to our attention, and which we have been able to find, dealing with this question. These cases are all between the parties who made the contract and who had knowledge that it was made on Sunday; in short, they were suits between parties who were *in pari delicto.* The rights of innocent holders for value were not there discussed. The case which is perhaps nearer in point than any of these cases is that of *Duggan* v. *Champlin,* 75 Miss. 441, 23 So. 179. In that case the court used this language:

"Her signature on Sunday is a void act against one with knowledge of that fact, but the delivery of the deed on a secular day to a grantee not cognizant of the fact that it was signed on Sunday, is valid as to the wife and all persons claiming under her."

In the case of *Elkin Henson Grain Co.* v. *White,* 98 So. 531, this court held a check void in the hands of an innocent purchaser when given in payment for intoxicating liquor. Headnote 3 in that case is as follows:

"The general rule is that illegality of consideration is no defense to an instrument in the hands of a holder in due course, but to this rule there is the well-established exception that when a statute, expressly or by necessary

implication, declares the instrument absolutely void, it acquires no validity by its transfer to an innocent holder for value, and no recovery can be enforced thereon.''

Section 1102, Hemingway's Code, makes it a misdemeanor to do certain kinds of labor or work on Sunday. It does not expressly make the giving of any instrument on that day void. In the *Elkin case, supra,* the statute expressly made void the check. We are not called upon in this case to decide whether this Sunday or Sabbath law by necessary implication would make void an instrument dated that day.

In the case at bar the check is given a legal date, namely, April 1st. It is in the hands of a holder in due course without notice of the fact that it was issued on Sunday. This holder is an innocent purchaser for value without notice. To permit this defense would be to allow these defendants to take advantage of their own wrong, to profit by the fact that they had violated the Sunday law; while, on the other hand the plaintiff has violated no law and had no knowledge of its violation by the defendants. To permit this defense would be to allow the party who alone has been guilty of a breach of the law to set up his illegal act as a defense to a suit by an innocent party. This court will not entertain such a defense.

The court of appeals of Alabama, in passing upon a similar question says:

''The great weight of authorities seem to hold that one who gives to an instrument a legal date, thereby authorizing innocent parties to deal with it as such, cannot be heard to deny the legality of date in a suit against him by an innocent holder, who came into possession as a bona-fide purchaser for value, without notice. It would seem that this rule, as applicable to commercial paper, is essentially just, and based on sound reason.'' *Moseley* v. *Bank,* 3 Ala. App. 614, 57 So. 91; *Gordon* v. *Levine,* 197 Mass. 263, 83 N. E. 861, 15 L. R. A. (N. S.) 243,

125 Am. St. Rep. 361; *Cranson* v. *Goss,* 107 Mass. 439, 9 Am. Rep. 45.

In the case of *Knox* v. *Clifford,* 38 Wis. 651, 20 Am. Rep. 28, the rule is thus well stated:

"Where a party makes and puts in circulation a negotiable note purporting to be made and bearing date on some secular day, he is estopped, as against an innocent holder, from showing that it was actually executed and delivered on Sunday. We cannot well conceive of a stronger case for the application of the doctrine of estoppel than such a case presents."

Another case in point is *Johns* v. *Bailey,* 45 Iowa, 241.

In the case of *Love* v. *Wells,* 25 Ind. 503, 87 Am. Dec. 375, the court said that, assuming that a deed was delivered on Sunday and void, the party who executed it and gave it a secular date could not set up the invalidity of the deed against a subsequent vendee who purchased the land for a valuable consideration without notice of the transaction having transpired on Sunday. To allow the defendant such a defense would permit him by his own unlawful act to perpetrate a gross fraud upon innocent purchasers, and to such an act the law will not lend its aid or give its sanction.

We therefore conclude that the defendant is estopped from pleading the Sunday law in this case.

II.    The fact that the check was postdated does not destroy its negotiability or permit the making of the defenses existing between the original payer and payee.

Section 12 of the Negotiable Instruments Act, section 2590 of Hemingway's Code, is as follows:

"The instrument is not invalid for the reason only that it is antedated or postdated, provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires the title thereto as of the date of delivery."

The pleadings in this case do not allege that the check was postdated for an illegal or fraudulent purpose. The

purpose for which the check was postdated was for the payee, Kramer, to hold until he had complied with certain agreements, which agreements were not illegal or fraudulent.

Section 2634, Hemingway's Code, provides that—"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There is no allegation in any of these pleas that the holder of this check had actual knowledge of any infirmity or defect or knowledge of any facts on which he could be charged with bad faith. While there are some authorities to the contrary, we think the general rule is that a check which is negotiable in form is not rendered nonnegotiable because it is postdated, and that the indorsee of such a check is not put on notice of any defects because the check is negotiated prior to its date. The following authorities sustain this decision: *Triphonoff* v. *Sweeney*, 65 Or. 299, 130 Pac. 979; *Albert* v. *Hoffman*, 65 Misc. Rep. 87, 117 N. Y. Supp. 1043; *American Nat. Bank* v. *Wheeler*, 45 Cal. App. 118, 187 Pac. 128; *Wilson* v. *McEachern*, 9 Ga. App. 584, 71 S. E. 946; *Johnson* v. *Harrison*, 177 Ind. 240, 97 N. E. 930, 39 L. R. A. (N. S.) 1207.

The failure to put the proper revenue stamps on the check, in accordance with the federal law, does not render it nonnegotiable in this state. In the case of *Sowell* v. *Rankin*, 120 Miss. 458, 82 So. 317, this court held that— "The formalities to be observed in the making and recording of a deed to real property is a matter of regulation by the state in which the property is situated, and not by the general government, so that the United States Internal Revenue Law providing that unstamped instruments of writing shall be invalid and not subject to record has no application thereto."

Hence a deed unstamped is valid, is legally entitled to be recorded, and the fact that it is regarded as an un-stamped deed is constructive notice under the law of Mississippi in the same manner as if it was stamped in accordance with the laws of Congress in this respect.

The reasoning applied by the court in that case applies in this case. Our Negotiable Instruments Act is silent upon the subject of revenue stamps to be carried on checks or notes, and a failure to comply with the federal law upon this subject does not destroy the negotiability of the instrument in this state.

III. It is also perhaps proper to state that the fact that the check was negotiated by the payee in violation of his agreement with the payer is no defense to a suit by the innocent purchaser for value without notice. This rule is thus stated in R. C. L. vol. 3, p. 1013, par. 221;

"Where a negotiable instrument is put in circulation fraudulently and in violation of authority by one to whom the owner has intrusted the instrument, a *bona-fide* holder for value and without notice of the breach of trust may recover upon the instrument. . . . It is no defense against a *bona-fide* purchaser for value to prove that the person to whom the paper was intrusted was authorized to use it only for a particular purpose, and fraudulently converted it to a different purpose. . . . A person will be liable to a *bona-fide* purchaser for value on negotiable paper which he intrusts to an agent for negotiation, and which the agent misappropriates. The theory of these cases is that where a principal clothes his agent with apparent authority to negotiate negotiable paper, i. e. by indorsing such a note in blank, before maturity for a valuable consideration, the act of the agent, though wholly unauthorized, will bind the principal as effectually as if no defect of authority existed. Again, the reason is given, that where one of two innocent parties must suffer a loss, the loss must fall upon the one who,

by his trust and confidence has enabled the perpetrator of the fraud to commit it.''

See, also, same authority, page 298, par. 208 et seq. See, also, *Despres· et al.* v. *Drug Co.,* 123 Miss. 509, 86 So. 359; *Huddleston* v. *McMillan,* 112 Miss. 168, 72 So. 892.

The demurrers interposed to these special pleas should have been sustained.

The judgment of the court is reversed, the demurrers are sustained, and the case is remanded.

*Judgment reversed, demurrers sustained and the case remanded.*