CARL F. BRANDFASS *v.* JEROME KOHN

(No. 7417)

Submitted February 14, 1933.  Decided March 7, 1933.

*James Paull, Jr.* and *Ewing & McGinley,* for plaintiff in error.

*Schmidt, Hugus & Laas* and *Thomas J. Potts,* for defendant in error.

LITZ, JUDGE:

This is a proceeding in garnishment.

On April 28, 1930, the board of directors of M. Marsh & Son, a corporation, with its principal office at Wheeling, declared a dividend of twenty-five cents per share upon class B of its capital stock, payable May 1st, succeeding.  The following day, Walter L. Katzenstein, as secretary of the corporation, at the instance of Jerome Kohn, its president and a stockholder, drew the check of the corporation for $3,374.50, dated May 1, 1930, on the Chase National Bank of New York, payable to Kohn, in payment of his share of the dividend.  The check was mailed by Katzenstein to Kohn's address in New York between one and two o'clock in the afternoon of the same day.  Three or four hours later, an order of attachment,

issued in this action (brought by Carl F. Brandfass against Kohn) and returnable to the next term of court, was served upon the corporation as being indebted to Kohn. The check was paid, May 5th, following. The garnishee filed an answer September 8, 1930, averring that it was not, at the time of the service of the attachment or thereafter, indebted to defendant Kohn. On September 12, 1930, plaintiff over the objection of defendant examined Katzenstein before the court disclosing the facts hereinbefore recited. Thereupon, judgment for $3,374.50 was entered against the garnishee in favor of plaintiff.

The garnishee complains of the judgment against it on the grounds (1) that the issue of fact should have been tried by a jury, and (2) that the evidence does not warrant the finding of an indebtedness by it to defendant, Kohn, at the time of or after the service of the order of attachment.

''When it is suggested by the plaintiff in any attachment at law that the garnishee has not fully disclosed the debts due by him to, or effects in his hands of, the defendant in such attachment, the court shall cause a jury to be impaneled, without any formal pleadings, to inquire as to such debts and effects, and proceed in respect to any such found by the jury in the same manner as if they had been confessed by the garnishee. If the verdict be in favor of the garnishee, he shall have judgment for his costs against the plaintiff.'' Chapter 106, section 16, Code 1923. Plaintiff contends that the action of the trial court in disregarding the statutory procedure is immaterial because the merits involve a legal question and not an issue of fact. Granting this position, has the court correctly decided the law?

According to the general rule, ''a check is always so far payment until dishonored, that, after its delivery, the drawer cannot be garnisheed as debtor of the payee in respect to the debt for which the check is given.'' Morse on Banks and Banking, Vol. 2 (6th Ed.), p. 1159, sec. 543. ''Payment by check is generally held sufficient to defeat subsequent garnishment pro tanto as long as the check has not been dishonored. It has been held that in such a case garnishment is not defeated because of any contingency in the obligation sought to be subjected, but because of the suspension of de-

fendant's remedy against the garnishee, and hence that, where the check is dishonored, the debt for which it was given is subject to garnishment the same as though no check had ever been given. *But the garnishment places the garnishee under no obligation to stop payment on the check, unless the check itself is still within his control, in which case it has been held that it is his duty to reclaim it.''* 28 C. J. 148. ''One is not liable to garnishment if he has paid what he owed the defendant in attachment by a bank check, though the latter may not have presented the check to the bank and drawn the money prior to the service of the process of garnishment upon the drawer of the check. It is true that the funds in the bank are still under his control so that he might stop payment of the check; and, so far as the bank is concerned, he has the right to control the deposit; but he has no moral right to do so, considering his relation to the payee who has taken the check in payment or earnest of payment. *At all events, the drawer, as garnishee, is not under the slightest obligation to countermand his own check for the purpose of enabling a professed creditor of the payee to attach the credit in his hands and suspend settlement of his account with the payee for an indefinite time.''* Waples on Attachments & Garnishments, p. 264, sec. 364.

It seems to make no difference that the check is postdated. It is nevertheless payment *pro tanto* until dishonored. ''The instrument (check) is not invalid for the reason only that it is antedated or postdated, provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires the title thereto as of the date of delivery.'' Chapter 46, article 1, section 12, Code 1931. ''A check may be either antedated or postdated, and is not thereby invalidated under the Negotiable Instruments Law. An antedated check is payable immediately. A postdated check is payable on, or at any time after, the day of date. There is no question that a postdated check is in the United States a perfectly legal and proper instrument. In England a statute used to require that a postdated check should be stamped like a bill of exchange, and otherwise declared it invalid. But no such rule has ever obtained in our own country. A postdated check on its date, or after it, is

payable immediately, just like any other check.'' Morse on Banks and Banking, Vol. 1 (6th Ed.), p. 866, sec. 389. ''It makes no difference (independent of any statutory regulation) whether a check be postdated or antedated, and it is still payable according to its express terms. *The drawing of postdated checks is an every-day occurrence in the commercial cities * * *.*'' Daniel on Negotiable Instruments, Vol. 2 (6th Ed.), page 1772, sec. 1578.

Defendant relies particularly on the case of *American Agricultural Chemical Co.* v. *Scrimger,* (Md.) 100 Atl. 774. There, a check postdated one day to conform to the date of the filing of administrators' account, was delivered on the day of its execution by the administrators of a decedent's estate, to an attorney for one of the distributees, as his share of the estate. A few hours thereafter a judgment creditor of the distributee served an attachment process on the administrators. No statute was involved. The court, holding the check to be a conditional payment of the debt, said: ''The fact that the check was postdated does not, we think, affect the question here presented. *A postdated check is a perfectly legal and proper instrument, and like any other check is payable immediately upon the day of its date.* It is simply and unquestionably payable on demand so soon as the day of its date is reached. Morse on Banks and Banking, sec. 389.'' In *Wilson* v. *McEachern* (Ga.), 71 S. E. 946, it was held that ''a postdated check, or one which bears a date subsequent to that of its actual issue, is payable on or after the day of its date, being in effect the same as if it had not been issued until that date; but in the meantime it is a negotiable instrument, and the drawer thereof cannot be charged as garnishee of the payee, unless it affirmatively appears that at the time of the rendition of the judgment against the garnishee the check had become due, and was still the property of the payee.''

We are likewise of opinion that the giving of a postdated check for a debt is (in the absence of fraud) conditional payment thereof; and that the subsequent service of garnishment process by a creditor of the payee upon the drawer, before the check is payable, will not create a liability against the garnishee on account of the debt unless the check be afterward dishonored.

It is suggested that the garnishment should not be defeated by the check because the mere authority of a corporation officer to draw checks does not permit him to execute postdated checks. This theory is without merit (1) because it is not shown that Katzenstein did not have authority to draw postdated checks, and (2) the want of such authority could be taken advantage of only by the corporation itself.

These conclusions result in the reversal of the circuit court. The judgment complained of is, therefore, reversed and the case remanded for further proceedings.

*Reversed and remanded.*